John Schlottman, Exr., et al. *v.* Jerry Hoffman et al.

1. Wills. *Pecuniary legacies. Numerals used ambiguously to designate amount. Parol evidence admissible to aid construction.*

   Where, to a will disposing of the whole estate of the testator, a codicil is added creating pecuniary legacies in favor of persons not otherwise provided for, and the amounts to be paid the legatees are respectively indicated by the numeral five following the dollar mark, with two zeros following this numeral, but so separated from it, and so situated above the line on which all the figures appear, as to make it uncertain, in the absence of the decimal mark, whether five hundred dollars or five dollars was intended by the testator, parol evidence as to the situation of the testator, the condition of the family, the character and quantity of the estate, and the circumstances attending the execution of the codicil, is admissible for the interpretation of the instrument.

2. REFORMATION OF WILLS. *Courts have no power to decree same. Contest barred. Construction alone allowable. Code* 1880, § 1961.

  No court can decree the reformation and correction of a will, and where the statutory limitation of two years after probate has barred all contest, the only question remaining open is that of the true construction of the instrument.

3. PATENT AMBIGUITY. *When parol evidence admissible.*

  Different sums may be expressed by the use of the same characters or figures, according to their collocation; and where they are so arranged that an uncertainty as to their meaning is suggested, the ambiguity thus arising, while it appears on the face of the instrument, is not subject to the rule excluding parol evidence where it is sought to add a new term to an instrument, or where the court, after having looked to the circumstances of the parties, the subject-matter of the instrument, and all proper collateral facts, still remains uncertain as to the meaning of the written words.

4. LATENT AMBIGUITY. *Words with double meaning so classed.*

  Where the words in question are all sensible, and have a settled meaning, but at the same time admit of two interpretations, according to the subject-matter in contemplation, a class intermediate between latent and patent ambiguities has been recognized by authority; but the more satisfactory solution of the difficulty is to assign ambiguities of this character to the class of latent ambiguities.

FROM the chancery court of Warren county.

HON. CLAUDE PINTARD, Chancellor.

The opinion states the case.

*Frederick Speed*, for the appellant.

It is said that the meaning of the deceased cannot be shown by parol, and that we are bound to accept the construction which the appellees put upon the characters rather than that which the executor puts upon them. It is undoubtedly true that parol evidence cannot be admitted to destroy the will by substituting something else for what the testator has written therein, and so to make a new will, but when there arises something dehors the will, as to the person or subject meant to be

described, which the law knows as a latent ambiguity, it is always competent to show by parol evidence what that something is. *Love* v. *Buchanan*, 40 Miss., 758–760; *Gilliam* v. *Brown*, 43 *Ib.*, 642, 652. That something in this case is the fact that the person who filled up the blank in the codicil employed characters, which, standing by themselves, mean either one of two things—five or five hundred.

While it is true that no judge is at liberty to pronounce anything ambiguous or uncertain, until he has brought to his aid all the lights afforded by the collateral facts and circumstances, which, as we have shown, may be proved by parol (1 Greenleaf on Ev., 298), it is undoubtedly his duty to avail himself of their aid.

A latent ambiguity is something that is "not visible or apparent, not seen, hid, concealed" (Webster); one "which arises from some collateral circumstance or extrinsic matter in cases where the instrument itself is sufficiently certain and intelligible" (Bouvier). "These," says Mr. Greenleaf, "are subjects for the consideration of the jury, and may be explained by parol evidence." 1 Greenl., § 301. And this author illustrates the doctrine by saying that "when there are two persons to whom the entire description applies, this description, though accurate, would be ambiguous." *Ib.*, § 299, 301. Now, in the case at bar, there are characters which may mean either five or five hundred, according to the location of the absent decimal point, which must be inserted to make either intelligible. The court is called on to add that which is missing, and shall it be said that it must do so blindly, when it can call to its assistance a number of persons whose testimony will show where it should be placed to give effect to the intention of the testatrix. *Jenkins* v. *Bodley*, 1 Smed. & M. Chy., 344. The same rule applied to land should also be applied to dollars where mentioned in an instrument. Is there any reason why the mistake of a scrivener who draws a deed to land and by mistake inserts a wrong description, should be corrected by

parol evidence, and that of an ignorant witness who fails in an attempt to follow the directions of a testator, and, through his ignorance, inserts a meaningless description of the number of dollars, or writes a description which is contrary to the intention of the testator, should not be corrected by the same means?

The rule is not now, and never has been, as stated by the learned counsel for appellees, or as it was applied by the chancellor. The maxim is that "a latent ambiguity may be supplied by evidence, for an ambiguity that arises out of a fact may be removed by proof of the fact." Broom's Legal Maxims, 23. It is not necessary that the ambiguity should be shown upon the face of the instrument, but the question is whether the evidence shows such a state of facts as to create a latent ambiguity. *Gildart's Administrator* v. *Howell,* 1 How., 205, note; *Foute* v. *Fairman,* 48 Miss., 550; 1 Greenl., 397; *Elliott* v. *Connell,* 5 Smed. & M., 107; *Bowers* v. *Andrews,* 52 Miss., 596, 606; Dayton on Surrogates, 383, 385; *Gilliam* v. *Chancellor & Murray,* 43 Miss., 453; Chilton's Probate Court Law, 118; *Wilson* v. *Horn,* 37 Miss., 478; *Heirn* v. *McCaughan,* 32 Miss., 45; 2 Smith's Leading Cases (Am. ed.), 514, 563; *McComb* v. *Gilkey,* 29 Miss., 146, 190; *Clark* v. *Perry & Fox,* 4 How., 285; *Buckells* v. *Cunningham,* 6 Smed. & M., 358; *Williams* v. *Claiborne,* 9 Smed. & M., 489; *Marsh & Pendleton* v. *Lisle,* 34 Miss., 173; *Eckford* v. *Hogan,* 44 Miss., 398; *Luckett* v. *Henderson,* 12 Smed. & M., 334; *Hunt* v. *Chambliss,* 7 Smed. & M., 532; *Blake* v. *Morrison,* 33 Miss., 123; *Anding* v. *Davis,* 38 Miss., 574; *Peques* v. *Mosby,* 7 Smed. & M., 340; *Lauderdale* v. *Hallock, Ib.,* 622; *Ross* v. *Wilson, Ib.,* 753; *Willis & Conley* v. *Ives,* 1 Smed. & M., 307; *Whitworth* v. *Harris,* 40 Miss., 483; *McGuire* v. *Stevens,* 42 Miss., 725; *Wren* v. *Hoffman,* 41 Miss., 616.

It follows from an examination of these authorities that the court must receive parol evidence to ascertain whether an ambiguity exists, and the question simply is whether there are facts dehors the will which explain, not destroy it. If such facts

exist at all, they are to be given due weight, and if it is found that they supplement the will, and make clear what was in doubt before, the court must be governed by them. In the case before us, these facts supply that which is indispensable to make it intelligible by showing that the intention of the testator was to place the decimal point after the figure "five," so as to make it read five and not five hundred dollars; and it would have been absurd for her to have defeated the object she had in making a will at all, which was to provide for the support of her unmarried daughter, who had supported and cared for her during her old age, and in her last illness, which was of long duration, by giving a sum which it was impossible for her executor to pay to her sons without defeating the provision she had made for her daughter. If parol evidence is admissible to show her "surroundings and intention to reach her meaning and purpose," then it is incontrovertible that she did not intend to strip her daughter of the provision she had made for her, and to give it to two of her three sons; and this view is emphasized by the fact that the son omitted is an imbecile, and a life burden upon the daughter, and the two who it is claimed she made this extraordinary provision for are shown by the evidence to have been unworthy of her bounty.

2. The chancellor erred in suppressing the parol evidence offered by appellants touching the real intention of the testatrix. The answer and cross bill set forth a state of facts which clearly entitled the appellants to have the codicil reformed and corrected as prayed. It is set forth that the testatrix, Martha Hoffman, an aged person, who could neither read nor write, directed one of the witnesses to her will and codicil to fill up a blank in the codicil with the words "five dollars," and that he (Speiller) wrote what he thought was "five dollars," and so read it to her when he wrote her name there. It was also charged that if anything else was therein written, it was a mistake which defendants were entitled to have corrected by a reformation of the codicil, so as to make it correspond with

testatrix's intentions.　On authority, the appellants were clearly
entitled to this relief.　2 Story's Eq. Juris., p. 998; 1 *Ib.*,
§§ 164–167, 179; *Nutt* v. *Nutt*, 1 Freeman's Chy., 130; Day-
ton on Surrogates, 168, 169; Smith's Manual of Equity, 52;
*Peques* v. *Mosby*, 7 Smed. & M., 346; *Lauderdale* v. *Hallock*,
*Ib.*, 629; *Harringtan* v. *Harrington*, 2 How., 718; *Simmons*
v. *North*, 3 Smed. & M., 71; *Mosby* v. *Hall*, 23 Miss., 82;
*Kilpatrick* v. *Kilpatrick*, *Ib.*, 128;　*Gray* v. *Boden*, 24 Miss.,
667, 668; *Marquis of Townsend* v. *Stangrood*, 6 Vesey, 332,
333; *Elliott* v. *Connell*, 5 Smed. & M., 107; *Kerr* v. *Kuyken-
dall*, 44 Miss., 145; *Dunbar* v. *Newman*, 46 Miss., 235; *Willis*
v. *Guttman*, 53 Miss., 731; *Cummings* v. *Steele*, 54 Miss., 649.

3. It was also error for the court below to order a sale of
the fee in the real estate to satisfy the pecuniary legacies.　The
real estate is not chargeable with pecuniary legacies unless the
intention of the testator so to charge it has been expressly de-
clared, or may be fairly deduced from the language of the will.
*Knotts* v. *Bailey*, 54 Miss., 238.　This cannot be said of the
present controversy.

*Wade R. Young*, for the appellees.

1. The question of the competency of parol evidence to con-
tradict or vary the terms of a will has been so often decided in
a manner favorable to the contention of the appellees that it is
like threshing old straw to cite authorities.

In Schouler on Wills, § 568, we find the rule thus stated:
"Where the language employed in the will is clear and of well-
defined force and meaning, extrinsic evidence of what was in-
tended in fact cannot be adduced to qualify, explain, enlarge
or contradict this language, but the will must stand as it was
written.　Nor are plain words to be read differently or changed
upon any plea, however capable of proof aliunde, that the tes-
tator meant different words, especially, if the effect would be
to alter the disposition from that expressed in the instrument—
as, for example, where it is claimed that a legacy of $500 was

wrongly written for $5,000; while, on the other hand, a cler-
ical error, apparent from the context, might be corrected in
construction without the need of external proof at all.'' To
the same effect are the following: *Currie & Naylor* v. *Murphy*,
35 Miss., 487; *Love* v. *Buchanan*, 40 Miss., 758; *Mann* v.
*Executors of Mann*, 1 Johns. Ch., 233; *Magee* v. *McNeil*, 41
Miss., 17; *Gilliam* v. *Brown*, 43 Miss., 641; *Ehrman* v. *Hos-
kins*, 67 Miss., 194.

As there is no question in this case, either of latent ambigu-
ity arising dehors the will, as to the person or subject meant to
be described, or of a resulting trust, the motion to suppress the
testimony offered by appellants was properly sustained. If
there was any ambiguity at all, it was a patent ambiguity, re-
sulting from the use of the characters to express the amount of
the legacies, instead of the more usual letters, and such ambi-
guity, even if it existed, could not be explained by parol evi-
dence. But there is no question of ambiguity at all, as the
characters are to be construed in their plain and natural sense,
unless a different intention be manifested by the context; and,
taken in that sense, they express $500, and not $5. Schouler
on Wills, § 471; *Vannerson* v. *Culbertson*, 10 Smed. & M.,
150; *Tucker* v. *Stites*, 39 Miss., 196.

In *Templeton* v. *Tompkins*, 45 Miss., 424, the characters
$300 are used to express three hundred dollars; and so in every
transaction where the ciphers are used instead of the words,
until they have come to have a meaning which is as plain and
free from ambiguity as the words themselves. But, even if
there was or could be a doubt as to the meaning of the figures,
parol evidence would not be admissible to show the intent of
the testator, but there should be a reference to a master, and
expert testimony taken. 1 Redfield on Wills, § 632, par. 35.
The case of *Norman* v. *Morrell*, 4 Vesey, 768, illustrates the
distinction. In that case the doubt arose not as to the plain
and usual meaning of the characters 800, but as to whether the
first figure was an eight or a three. It is doubtful if, under

our rule, extrinsic evidence could be received even in a case of that kind, as the ambiguity would be patent, and the doubt to be solved from the construction of the instrument itself.    But there is no doubt either as to the plain and usual meaning of the characters $500 or as to the figures; there can be no occasion for a reference and expert testimony, or for an issue and extrinsic evidence.

2. Courts of equity have no jurisdiction to correct mistakes in a will, as to their effect, unless the mistake is apparent on the face of the instrument or can be made out by a due construction of its terms, and appellant's prayer for a reformation of the will and codicil in suit was properly denied.    Schouler on Wills, § 220.

3. The will directed that the legacies should be paid out of the estate, and this made them an express charge on the real estate devised.    *Templeton* v. *Tompkins*, 45 Miss., 424; *Heatherington* v. *Lewenberg*, 61 Miss., 372.

COOPER, C. J., delivered the opinion of the court.

The appellees, Jerry and Rufus Hoffman, exhibited their bill in this cause against John Schlottman, executor of the will of their mother, Martha Hoffman, and against Ella Hoffman, the devisee of the general estate of the said Martha, to enforce certain legacies given to them by the testatrix, and which complainants aver are charged by the will upon the property devised to said Ella.

By her will, dated December 18, 1885, Mrs. Hoffman devised and bequeathed her whole estate to her daughter, Ella, for life, with remainder over to such of the children of her daughter, Emma Schlottman, as should survive Ella, and if none of the such children should survive the said Ella, then the remainder was given to the said Emma Schlottman.    On the — day of May, 1886, the testatrix executed the following codicil, viz.: "Confirming and not revoking any of the provisions of the foregoing will, I direct that there shall be paid by her, out of

the estate bequeathed by me to my said daughter, Ella Hoffman, to my son, Jerry Hoffman, the sum of $5 00 dollars, and to my son, Rufus Hoffman, the sum of $5 00 dollars, as memen- toes of my affection for them, the same to be in full of all claims and demands by them against my estate.''

The will of Mrs. Hoffman was probated in August, 1886, and this bill was exhibited on June 21, 1894.

The executor, Schlottman, and the devisee, Ella Hoffman, answered the bill, and made their answer a cross bill against the complainants. By the answer and cross bill it is averred that the testatrix owned at her death no personal estate, except a small quantity of household and kitchen furniture of little value, and that her real estate consisted of her home; that for a long time before her death the testatrix was an invalid, de- pendent for her support upon the exertions of the defendant, Ella, who, in the residence of the testatrix, kept a boarding house, and supported not only her mother, but the complain- ants in this suit; that after the death of the testatrix, the said Ella has supported an afflicted brother, and that complainants, from that time up to within six months of the institution of this suit, boarded with said Ella, the complainant, Jerry, having a family of three persons; and that during all this time neither of complainants has contributed anything to the support of themselves, the family of Jerry or said afflicted brother. The cross complainant, Ella, charges that, if in fact a charge was fixed by the testatrix on the property for the payment of the legacies claimed by the complainants, that the sum due has been more than paid by her in supplying them and the family of Jerry with board and lodging, and she prays an account of the amount due her before and since the death of the testatrix, and that the same may be applied to the payment of the legacies claimed.

The cross bill further charges that, ''at the time when the said will and codicil thereto was made, said Martha could neither read nor write, and was wholly dependent upon others, who read to her said will and codicil, and that all of the con-

tents thereof were read to her when they were severally exe-
cuted; that it was the intent and purpose that the sum of five
dollars should be given to each of the complainants, and that
when said codicil was read to her and executed by her, the sum
mentioned as bequeathed to them was read as five, and not five
hundred dollars, and it was the intent and purpose of the per-
son who wrote the words [figures] alleged to be five hundred
dollars to write five dollars, and, in truth and in fact he did so
write, and if it appears otherwise, it is a mere clerical error
of the person who wrote the same.''

The plaintiffs prayed that the court would construe the will
''according to the true intent and purpose of the testatrix,''
but if the court should be of opinion that the will as written,
by clerical error of the scrivener, was made to express a differ-
ent purpose than that intended by the testatrix, then, that the
same should be by proper decree corrected and reformed so as
to express her true purpose; and, finally, that if it should be
decreed that complainants were entitled to a legacy of $500
each, then, that the court would direct an account to be stated,
showing the amount due by each of them to the plaintiff, Ella,
and the sums so found due be applied to the discharge of the
legacies.    The complainants answered the cross bill, denying
the averments thereof.

On final hearing the chancellor suppressed the evidence taken
by the plaintiffs, which will be alluded to hereinafter, and ren-
dered a final decree directing the sale of the real estate of the
testatrix for the payment of a legacy of $500 to each of the
complainants, with interest thereon from August, 1887—one
year from the probate of the will—and from this decree all
parties appeal.

The executor and Ella Hoffman assign for error the action of
the court in decreeing the amount of the legacies to be five
hundred instead of five dollars, and the complainants assign for
error his refusal to allow interest on the legacies from the pro-
bate of the will.

The original will is certified to us for inspection, and, from such inspection, it is manifest that the Christian name of the legatee, Rufus, and the characters and figures $5 00 in the codicil are in a different handwriting from the body of the codicil. The real controversy in the case is whether these characters and figures express the sums of five or five hundred dollars.

It is well settled that no court can decree the reformation and correction of a will to make it conform to the purpose and intention of the testator not expressed in the instrument as executed by him:

1. Because the testator has passed beyond the jurisdiction of all earthly courts.

2. Because a will is a voluntary conveyance, and, if the court had jurisdiction of the testator, it could not compel him to make a will of any sort.

3. Because the statute of wills provides for the devolution of property by wills actually made, and not by those parties intend, however definitely, to make but do not make.    *Rhodes* v. *Rhodes*, L. R., 7 App. Cas., 198; Schouler on Wills, § 220; *Ehrman* v. *Hoskins*, 67 Miss., 192; 2 Pom. Eq., § 871; *Bingel* v. *Volz* (Illinois), 10 L. R. A., 321, and note.

If, when the will was presented for probate, or within two years thereafter (code of 1880, § 1961), the validity of the codicil had been contested, it would have been competent, under the issue of *devisavit vel non*, to challenge the codicil as not in fact a part of the will of the testatrix.    In this contest it might have been shown that the testatrix was unlearned and unable to read or write; that the codicil was read to her as one giving five dollars instead of five hundred to the complainants, and, because of such fact, that she did not, in fact, execute understandingly a codicil giving them the larger sum.    In short, anything might have been proved the legal effect of which would show that the paper offered for probate was not, in whole or in part, her will.

But our statute declares that "if no party shall appear within

two years to contest the will, the probate shall. be final and forever binding, saving to infants and to persons *non compos mentis* the period of two years to contest the will after the removal of their respective disabilities." Code of 1880, § 1961.

Nearly eight years intervened after the will of Mrs. Hoffman was admitted to probate before the bill in this cause was exhibited, and, as to the parties to this controversy, the probate is "final and forever binding," conclusively establishing that the particular instrument, as written, was and is the legal will of the testatrix. The single question left open for consideration and decision by the courts is the true construction of the instrument thus adjudicated to be the last will of Mrs. Hoffman. 1 Jarman on Wills, 33.

The first inquiry, when we come to the construction of the will, is whether the court is shut up to a mere inspection of the instrument, or may look to extraneous evidence for the purpose of discovering the meaning of the testatrix as found in the language she has employed. Counsel for complainants contend that. parol evidence is inadmissible, because the will is an unambiguous instrument; that no parol testimony can elucidate its plain language, and that to create an ambiguity by resorting to other evidence, and then to solve it by giving controlling effect to such evidence, would be to substitute for the will actually made by the testatrix one which the court thinks she intended to make.

Our examination of the authorities cited by counsel, and of many others, has failed to discover a case which in its concrete facts is analogous to the one before us. But cases are not of great value so long as well-settled principles light our way.

It is a well-settled canon for the construction of wills that the court will take into consideration the attending circumstances of the testator, the quantity and character of his estate, the state of his family, and all facts known to him which may reasonably be supposed to have influenced him in the disposition of his property; but that, when viewed in this light, and

from the standpoint of the testator, if the language of the will cannot reasonably be so construed as to carry out his discovered purpose, the will and not the intent of the testator must control. In other words, if the will as made may, without violence to its terms, be so construed as to effectuate the purpose of the testator, as disclosed by the will and attending circumstances, the courts will so construe it, but no circumstances are sufficient to control the clear and unambiguous language of the will. 1 Jarman on Wills, 428; 1 Redfield on Wills, 418–443.

Keeping in view the distinction between the interpretation of the written words and the direct evidence of intention independent of the instrument, let us recur to the written will viewed in the light of the circumstances of the testatrix. It appears from the evidence that the estate of the testatrix consisted of an insignificant quantity of personal property and her home, which was worth about three thousand five hundred dollars. The family consisted of the testatrix, who for some months before her death was an invalid, of an invalid son, of two adult sons (the complainants), and of a daughter, who was the support of the family. Besides these members of the household, there was a married daughter, Mrs. Schlottman, who resided with her husband.

By the will Mrs. Hoffman gave her entire estate to the daughter, Ella, for life, with remainder to the children of Mrs. Schlottman. After the execution of the will, an officious neighbor, who pretended to know the law, advised Mrs. Hoffman that her will would be subject to attack unless she gave to each of her sons as much as five dollars each, and though advised correctly by her attorney that this was unnecessary, she persisted in executing a codicil whereby they would be given these sums. The attorney drew the codicil, leaving blanks for the insertion of the Christian names of the sons, and the amount to be given.

Mrs. Hoffman, desiring to execute the codicil, called in one Speiler, a machinist, and requested him to fill in the blank

amounts by writing in each the sum of five dollars, and Speiler, in executing her directions, wrote the character $, the figure 5 and two ciphers in the manner hereinafter set out. Speiler is now dead, but the other subscribing witness to the codicil, Sproule, was examined as a witness, and testified that he remembered the instructions given by Mrs. Hoffman, and that Speiler, attempting to write the sum of five dollars, wrote the character and figures, as above stated. This witness thinks Speiler read the codicil to Mrs. Hoffman, reading the sums inserted as five dollars, but his memory is not clear as to this.

It is difficult to express in words the precise manner in which the figures are written. We trace them as best we can, and the words and figures appear thus: "To my son, Jerry Hoffman, the sum of          $5 00          dollars, and to my son, Rufus Hoffman, the sum of          $5 00 dollars, as mementoes of my affection for them," etc. Now, these figures, if written in one way, would express the sum of five hundred dollars; if written with the decimal mark ($5.00) would mean five dollars, and, so also, if written alone, without the decimal mark, either with the ciphers in the position of a numerator ($5 $\frac{00}{}$) or distinctly and unequivocally removed by sufficient space from the figure five. An inspection of the original codicil shows the ciphers in each case connected together, removed by a distinct space from the five, in the one instance somewhat above, and in the other distinctly above the line.

Where different sums may be expressed by the use of the same characters or figures according to their collocation, and, as arranged, an uncertainty as to their meaning is suggested, an ambiguity appears upon the face of the instrument; and such, we think, is disclosed by the codicil in this case. We cannot say whether the sum given to the legatees is five dollars or five hundred dollars. There is an absence of the decimal mark, but the ciphers are linked together, removed by an unusual space from the figure they qualify, and written not on the line, but somewhat above it. Now, this ambiguity, being a patent

one, it is contended by counsel for complainants, cannot be explained by parol testimony. This argument is made to keep out the parol testimony, for he perceives, of course, that when that is looked to a flood of light fatal to the complainants' cause is let in. But if, as we have said, there exists an ambiguity on the face of the codicil, then, unless parol evidence may be received, the codicil is inoperative (except under the rule of election), because the court would not know what sum to decree to be paid. The rule against the introduction of parol testimony in cases of patent ambiguity is very generally stated too broadly—frequently for the reason that, with reference to the case before the court, the rule, however broadly stated, is correct in its application. But it is not true that an ambiguity appearing on the face of the paper, if that alone be looked to, cannot be explained by parol, nor that all latent ambiguities may be. When the parol evidence is for the purpose of adding a material term to an instrument, or when the court, having looked to the circumstances of the parties, the subject-matter of the instrument, and all proper collateral facts, remains uncertain as to what the meaning of the written words is, a patent ambiguity appears, which parol evidence cannot aid. 1 Greenl. on Ev., §§ 299, 300.

The difficulty of distinguishing between patent and latent ambiguities led Judge Story to suggest that there was an intermediate class, partaking of the nature of both patent and latent ambiguities—*i. e.,* "when the words are all sensible and have a settled meaning, but at the same time consistently admit of two interpretations, according to the subject-matter in the contemplation of the parties." The subject is fully discussed in the notes by Cowen & Hill, and Edwards to 2 Phillips on Evidence, § 3, ch. 8. The solution of the difficulty by Prof. Greenleaf in assigning ambiguities of this character to the class of latent ambiguities, is perhaps as satisfactory as can be suggested, and reconciles many apparently conflicting statements of the rule.

Looking in the case before us to the situation of the testatrix,

the condition of her family, the character and quantity of her estate and the *res gestæ* of the execution of the will, we see clearly what she meant and intended to do, and no violence is done to the words she has employed, nor is anything added thereto, by accepting the figures of the codicil as meaning five instead of five hundred dollars, for they may mean indifferently the one or the other.

*Let the decree be reversed and cause remanded.*