LUCY A. WHEATON v. MARIA POPE and Another.[1]

January 15, 1904.

Nos. 13,712—(121).

**Payment by Executrix.**

A life tenant under a last will and testament, who is also the executrix named therein, may anticipate and discharge a pecuniary obligation, to mature after her death, to a remainderman, and the latter, accepting and retaining the payment, cannot be permitted to insist that the executrix shall again account for the amount when making a final settlement of the estate.

**Final Account.**

Held, that a certain item of $1,008.05 in the final account of an executrix was stated sufficiently definite and certain under the circumstances appearing at the trial, and that the court below did not err when, on appeal, it affirmed an order of the probate court allowing the item.

**Will—Latent Ambiguity.**

A latent ambiguity in a will, which may be removed by extrinsic evidence, may arise (1) either when it names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that

1 Reported in 97 N. W. 1046.

answer such name or description; or (2) when the will contains a misdescription of the object or subject, as where there is no person or thing in existence, or, if in existence, the person is not the one intended, or the thing does not belong to the testator.

**Misdescription.**

Where there is an evident misdescription of real property devised by will, and it clearly appears that certain land owned by the testator was that by him intended instead of that mistakenly described, a court should not hesitate to carry out and effectuate that intention if it can be done without disregarding well-settled rules.

**Intent of Testator.**

*Held*, in the case at bar that the court below was justified in its conclusion as to the intent of the testator when devising a misdescribed tract of land.

The probate court for Houston county having allowed the final account of defendant Maria Pope, as executrix of the will of Gershom Pope, deceased, and made a decree assigning the residue of the estate, plaintiff appealed to the district court for said county. The case was tried before Kingsley, J., who made findings of fact and as conclusions of law found that the order allowing the final account should be affirmed and the decree modified in certain particulars. From an order denying a motion for a new trial, plaintiff appealed to the supreme court. Affirmed.

*Duxbury & Duxbury,* for appellant.

*C. S. Trask* and *Gray & Thompson,* for respondents.

COLLINS, J.

Gershom Pope died testate in Houston county, in this state, May 5, 1885, leaving a widow, Maria Pope, and two married daughters, Lucy A. Wheaton and Emily J. Stewart, surviving him. May 25 of the same year his last will and testament was presented to the proper court, with a petition of the widow, who had been named therein as executrix, praying that it might be allowed and probated. The petition was duly granted, and Mrs. Pope was created executrix, and in due time inventories were filed of the real and personal property, and the time within which to file claims was fixed and fully expired. An account of the executrix was filed and duly approved on July 12, 1886. This showed a balance of personal property in her hands of the value of $4,008.05.

No final decree assigning the property under the will was made, and nothing further was done until the beginning of these proceedings in July, 1902. Mrs. Pope then filed a petition asking a final settlement of her trust account, representing that she had fully administered upon the estate, and praying that a time and place be fixed for an examination and allowance of her account and for the assignment of the personal property in her hands and of the real estate to the persons entitled thereto under the will. Mrs. Wheaton then appeared, and specifically objected to the allowance of one item mentioned on the credit side of the account, as follows:

"By various expenses and disbursements, not itemized, including gifts to church and relatives, $1,008.05."

The executrix claimed that she was entitled to credit for the amount, and, if allowed, the balance in her hands on account of personal property was $3,000. No other person objected to the allowance of this item. The objection was that this item was unauthorized, and that the charge was not properly itemized.

By the terms of the will Mrs. Pope was given a life estate in both the personal and real property of which Mr. Pope died possessed, and it was expressly provided that no bonds should be required of her as executrix. And, having a life estate in the personalty, she was not required to account for the earnings or increase thereof during the seventeen years it had been in her hands when these proceedings were instituted. Two pieces of real estate were described, or attempted to be described, in this will—one, of three acres, being devised, subject to the life estate before mentioned, to Mrs. Stewart in fee; and the other, of one hundred acres in fee, but subject to said life estate, to Delwin P. Stewart, a grandson of the deceased.

Immediately upon the filing of the petition by Mrs. Pope, Mrs. Wheaton filed a petition wherein she represented that the deceased left two certain tracts of real estate situate in the county of Houston, one of which, described by metes and bounds, contained about three acres, and on which he resided at the time of his decease; and the other, also described by metes and bounds, embracing one hundred acres. It was admitted in this petition that the tract of three acres was correctly described in the will, but it was asserted that, after this instrument

was filed for probate, the judge of the probate court requested one Marshall, who was the draftsman of the will, and a witness to its execution, to insert in the description of the larger tract of land the words and figures "N. E. ¼," representing to him that there appeared to be an error in the description, and that said letters and figures were necessary to correct the error; that thereupon Marshall complied with the request, and inserted the letters and figures above mentioned in the body of the will, and that a certified copy of the will, with these words and figures inserted therein, was duly recorded in the office of the register of deeds of Houston county; that the will was actually probated with these words and figures unlawfully and fraudulently inserted, and that the petitioner failed to discover this act of Mr. Marshall until about July 1, 1902. On this petition, Mrs. Wheaton asked that the letters and figures so inserted might be stricken out of the will as probated and as recorded, and that the court declare the same to be no part of that instrument, or of the record thereof. A citation was issued directed to and served upon Delwin P. Stewart, devisee.

Subsequent proceedings were had in probate court, whereby the item of $1,008.05 before mentioned was allowed as a credit in the account of the executrix, and her liability to the estate was fixed at the sum of $3,000 on account of the personalty. The personal property, value $3,000, was then assigned and vested in supposed accordance with the provisions of the will. The three acres before mentioned, on which the testator resided at the time of his death, were assigned to and vested in Mrs. Stewart, subject to the life estate held by her mother as provided in the will. The petition of Mrs. Wheaton to have the will and the record thereof revised was denied, the court holding that the words and figures "N. E. ¼" were a part of the instrument when it was presented, proved, and probated, and that by its decree there was then vested in Delwin P. Stewart in fee, subject to the life estate of the executrix, one hundred acres of land, describing it by metes and bounds, and with much more particularity than was found in the will. It stands admitted, and the court found, that this particular tract was owned by Gershom Pope when he died, had been his property for over forty years, and that when he made his will, for a long time previous, and at the time of his decease he owned no other real estate whatsoever, except the three-acre tract.

From this decree Mrs. Wheaton appealed to the district court, and its determination was satisfactory, except as to the credit item of $1,008.05 and the devise to Delwin P. Stewart. As to these matters the decision was in substantial accord with that of the probate court. It was found that the one hundred acres devised to Mr. Stewart was thus described in the will:

> "I give and bequeath to my grandson Delwin P. Stewart the following described piece or parcel of real estate situated in the Town of Wilmington County and State aforesaid: to wit: Commencing at the Southeast corner of the Southwest quarter of N. E. $\frac{1}{4}$ Section One (1) in Township One hundred and One (101) of Range six (6) West of the 5th Principal Meridian, running West One hundred and sixty (160) rods, thence North One hundred and fifteen (115) rods; thence in a Southeasterly direction to the east line of said Southwest quarter of Section one (1), thence South eighty five (85) rods to the place of beginning, containing one hundred (100) acres more or less to him and his heirs forever, subject to the bequest first above written only."

This was obviously erroneous, because the alleged description was meaningless. Striking out the words and figures "N. E. $\frac{1}{4}$" from the will—and the testimony would fully justify a finding, in a proper case, that they were inserted after the testator's decease—a tract of land of about one hundred acres would be accurately described, but its location would be in the southwest quarter of section 1, and such tract was never owned by the testator. It was nearly eighty rods from the one hundred acre tract that he did own. But the court found that the land intended to be devised and which was actually devised to Delwin P. Stewart was the one hundred acres owned by the testator for forty years prior to and at the time of his decease, and by its conclusion of law ordered judgment to be entered assigning it to him, subject to Mrs. Pope's life estate and to other conditions found in the will.

As to the item of $1,008.05 the court found that the executrix first debited herself with the sum of $4,008.05, the amount on hand July 12, 1886, and for which she was then liable, and then credited herself with the amount of this item; the balance being $3,000. It further

found that subsequent to July 12, 1886, and prior to the making of the final account in 1902, she had paid to Mrs. Wheaton, out of the moneys in her hands, as executrix, the sum of $600, and had also paid to Mrs. Stewart the same amount; and, further, that Mrs. Wheaton acquiesced in and consented to the payments to her, and because of this acquiescence and consent, and because of Mrs. Stewart's failure to object to the item, that the executrix was entitled to credit in her account for $1,008.05 at least.

In construing this finding of fact to ascertain exactly what it means we have a right to refer to the testimony, and we discover that the court below would have been fully justified in finding that upon the hearing in the probate court of the petition made by the executrix for a settlement and allowance of her final account it was stipulated and agreed in open court by Mrs. Wheaton, in consideration of the fact that these and other payments had actually been made, that the executrix should be allowed credit for the full amount of this item; or, in other words, that the objection which had theretofore been made by her was withdrawn and waived in a most formal manner, and that this item was allowed because Mrs. Wheaton withdrew her objection, and then and there consented to its allowance. There was no controversy about the payments we have mentioned. They were made without a formal order by the court, but both Mrs. Stewart and Mrs. Wheaton acquiesced by accepting the money. We think, taking into consideration the testimony we have referred to, that the finding of fact as to payment was fully justified, and that it entirely supported the conclusion of law predicated upon it to the effect that, subject to the life estate of the executrix, the personal estate in her hands amounted to but $3,000, and that this amount was to be distributed to certain named persons in accordance with the provisions of the will.

These payments can properly be regarded and treated as assignments to the residuary legatees, Mrs. Stewart and Mrs. Wheaton, $600 to each. It appears that the executrix chose to waive her rights while living, and to pay over money which she was entitled to hold during her lifetime, and that the legatees accepted it, and there cannot be, and ought not to be, any legal ground for complaint on the part of the latter, or of either of them. Payment of part or all of the amount to which Mrs. Wheaton might become entitled upon the death of her mother could be anticipated

without violating the law. If money is accepted by remaindermen from the life tenant under such circumstances, it may fairly be implied that it is on account of the payment which would have become payable upon the termination of the life estate. A life tenant, realizing and recognizing that a legal obligation is to be cancelled after his decease, may anticipate and discharge it in his lifetime, and in so doing he is entitled to protection when rendering his account. It would be noticeably unjust if Mrs. Wheaton could accept a payment out of the funds of the estate, and then be permitted to insist that the executrix should again account for the amount of such payment.

This case is analogous to one where an administrator is held to have settled the estate, when, having paid the debts reported by the commissioners or tribunal which passes upon the claims presented and fixes the amount of debts, he has handed over the remaining property to the distributees without further proceedings in probate court. Such a case was Brown v. Forsche, 43 Mich. 492, 493, 5 N. W. 1011. The property there held in trust was turned over by an administrator to the distributees of the estate, and to the injury of creditors, without an order of the probate court authorizing or requiring the administrator so to do. The language used by the learned Judge Cooley, who wrote the opinion, is in point, and is as follows: "A probate case on appeal is to be tried and determined on the same principles that would be administered by the probate court itself. That court, in adjusting the accounts of administrators, is governed by broad principles of equity; and it is at all times competent for the administrator, unimpeded by technical rules, to show the fairness of his dealings, the real nature of his transactions, and to restrict the amount for which he should be held liable to that which equity demands. Upon any other rule he might be made to bear the burden of events for which he was in no degree responsible, and when he was acting in the most conscientious discharge of duty."

But counsel for Mrs. Wheaton urge that all of the testimony received by the trial court on which the finding of payment was predicated, and also all of the testimony concerning the stipulation in probate court made in respect to the allowance of the disputed item, was objected to on the ground that, as found in the account, this item presented no claim for which the administratrix was entitled to credit; and, further, that the testimony was not within the issues. In answer to this we reach

91 M.—20

the conclusion that, while the statement of the item was not as full and specific as it might have been made, it was sufficiently definite for the purposes of trial in the district court, in the absence of any demand that it be made more specific, or for a bill of particulars, and in the absence of all pleadings. It must be remembered that the trial in question was upon the return made by the probate court, and that no issues were framed through formal pleadings. In such cases there must necessarily be some latitude in the examination and consideration of an account, and in the introduction of evidence the trial court must not be too strict.

We have stated that, if the words and figures "N. E. ¼," said to have been inserted, are omitted from the will, the land described is a tract never owned by the testator, and about one-half mile from a tract of like size and shape owned by him for some forty years before and at the time of his death; and also that the will as probated, with the words and figures "N. E. ¼" therein, failed to describe any tract of land whatsoever because of its indefiniteness of description. Taking the instrument, as probated, as conclusive in this proceeding, we have a clear case of latent ambiguity. Whenever there is a description in a writing of an object or a subject which is not in existence, there is an ambiguity which may be removed by extrinsic evidence. The rule is well stated thus: "A latent ambiguity in a will, which may be removed by extrinsic evidence, may arise (1) either when it names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that answer such name or description; or (2) when the will contains a misdescription of the object or subject, as where there is no such person or thing in existence, or, if in existence, the person is not the one intended, or the thing does not belong to the testator." Patch v. White, 117 U. S. 210, 6 Sup. Ct. 617. Again: "Where the meaning of such an instrument as a will is involved in uncertainty because of misdescription, the intention may be ascertained by extrinsic evidence, and, when so ascertained, will be taken as the meaning of the testator if such meaning can be distinctly derived from a fair and rational interpretation of the language employed." Zirkle v. Leonard, 61 Kan. 636, 60 Pac. 318.

A will must always be construed so as to give effect to every part of it, provided an effect can be given it not inconsistent with the general

intention as gathered from the entire instrument. Where it is clear on the face of such an instrument that a testator has not accurately or clearly expressed his meaning by the words used, words may be supplied to effectuate 'the intention as gathered from the context. A large number of cases might be cited to illustrate the rule and its applicability here, but the following are extremely pertinent: Seebrock v. Fedawa, 33 Neb. 413, 50 N. W. 270; Govin v. Metz, 79 Hun, 461, 29 N. Y. Supp. 988; Priest v. Lackey, 140 Ind. 399, 39 N. E. 54; Chambers v. Watson, 60 Iowa, 339, 14 N. W. 336; Covert v. Sebern, 73 Iowa, 564, 35 N. W. 636; Stewart v. Stewart, 96 Iowa, 620, 65 N. W. 976; Flynn v. Holman, 119 Iowa, 731, 94 N. W. 447.

Where there is a misdescription of property intended to be devised, and where it appears clearly that certain land owned by the testator was that intended by him, 'the courts should not hesitate to carry out and effectuate the manifest intention. In this particular case the scrivener was told by the testator that he wanted to devise to his grandson the tract of one hundred acres which he actually owned, and the former was furnished with a correct description of that tract, to be copied into the will. The mistake was that of the scrivener, not of the testator. More than this, the presumption here is that when the testator devised the one hundred acres of land of which he should die seised, subject to a life estate in his wife, that he meant and intended to devise his own lands, not the real estate of another. Case v. Young, 3 Minn. 140 (209).

We have not yet referred to the position taken by the court below, in effect, that Mrs. Wheaton could not be granted any relief upon her petition to revise the will and the record of the same. This is a collateral proceeding, and the decree attacked must stand as unimpeachable. This is well settled in all jurisdictions where probate proceedings are conducted in courts of record. But, should we hold to the contrary, and that the court might and ought to have found that the words and figures "N. E. ¼" were inserted after the will was made, the result here would be the same. Taking the will by its four corners, we find that the testator, first, created a life estate in his wife in all property, both real and personal, of which he should die seised. He then devised to his grandson, Delwin, a tract of one hundred acres, of which he should die seised; then to his daughter Mrs. Stewart the three-acre

tract on which he lived; and then to each of his three granddaughters he bequeathed $100. The balance of his property, both real and personal, he divided equally between Mrs. Stewart and Mrs. Wheaton, subject, of course, to his wife's life estate. And, finally, he provided that, should either of his two daughters, or either of his granddaughters, die before the final distribution of his estate, the share bequeathed to such daughter should descend in equal parts to his other lawful heirs; and, further, that, if his grandson should die before such final distribution, the one hundred acres should be equally divided between his two daughters. That he gave a life estate in his real property to his wife, and then devised the one hundred acres, expressly subject to this life estate, distinguishes this case from McGovern v. McGovern, 75 Minn. 314, 77 N. W. 970. This and other provisions of the will and the surrounding circumstances unmistakably pointed out his intent to devise the sole and only tract of one hundred acres owned by him.

We conclude that the intention of the testator was fully disclosed by competent evidence, and that the land devised by the will was the one hundred acres which had for many years been the testator's property, and in which he gave his wife a life estate. The court below was abundantly justified in so deciding.

Order affirmed.