**In re ESTATE OF Ruth N. COLE, Deceased.**

No. C4–00–1172.

Court of Appeals of Minnesota.

Feb. 13, 2001.

Ross F. Plaetzer, Minneapolis, MN, (for appellant Vining).

Eric C. Dammeyer, Davis & Dammeyer, L.L.P., Edina, MN, (for respondent personal representative).

William E. Sjoholm, Thomsen & Nybeck, P.A., Edina, MN, (for respondent Heidelberg).

Ann Huntrods, Darlene M. Cobian, Briggs and Morgan, St. Paul, MN, (for respondent Shriners Hospitals).

Considered and decided by KALITOWSKI, Presiding Judge, RANDALL and CRIPPEN, Judges.

## OPINION

CRIPPEN, Judge

The will of decedent Ruth N. Cole states a bequest to her friend, appellant Veta J. Vining, in "the sum of two hundred thousand dollars ($25,000)." Appellant disputes the trial court's determination to consider testimony of the will's scrivener that explains the contradictory language of the will. We affirm.

## FACTS

Ruth N. Cole executed a will on July 1, 1999, and died testate on July 8, 1999. Respondent personal representative petitioned the court for a construction of the will to find that appellant's bequest was for $25,000. After appellant contested the construction, the personal representative moved for summary judgment, basing the motion principally upon the affidavit and file notes of the scrivener, attorney Robert C. Black, III. Black's affidavit explains that he used his computer to "copy and paste" another paragraph of the will bequeathing "two hundred thousand dollars ($200,000.00)" to another individual and changed the name to Veta Vining. Black then changed the numerals to $25,000, the amount chosen by his client, but failed to change the words indicating the amount to "twenty-five thousand dollars." Appellant offered no evidence to contradict Black's affidavit or file notes and did not request the opportunity to cross-examine Mr. Black.

The trial court classified the bequest as patently ambiguous because the inconsistency appears on the face of the instrument. Referring to historic precedents for admitting direct evidence of intention for latent but not patent ambiguities, the court concluded that the distinction serves no useful purpose. The court then undertook the task of assessing the credibility of the evidence and found that the scrivener's testimony was reliable, that no genuine issue of material fact remained for further litigation, and that the bequest to appellant Vining must be construed as "the sum of twenty-five thousand dollars ($25,000)."

## ISSUE

Did the trial court properly consider direct evidence of a testator's intention in resolving contradictory provisions of a will?

## ANALYSIS

On appeal from summary judgment, the appellate court determines "(1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990) (citation omitted).

The history of the construction of wills and other instruments has been

shaped by two overriding rules. First, the court is to avoid doing any violence to the words employed in the instrument and to distrust the reliability of looking to sources outside the instrument for information about its meaning; second, the court is to effectuate the testator's intent. *See In re Estate of Kerr*, 520 N.W.2d 512, 515 (Minn. App.1994) (noting the distrust of extrinsic evidence by stating in the absence of ambiguity the court cannot consider an intention that the testator did not express in the will), *review denied* (Minn. Oct. 14, 1994); *Lord Cheyney's Case*, 77 Eng. Rep. 158, 158 (1591) ("[T]he constructions of wills ought to be collected from the * * * words of the will in writing, and not by any averment out of it * * *."), *cited in* James Bradley Thayer, *A Preliminary Treatise on Evidence at the Common Law* 416 (1898). Thus, the common-law use of outside sources was suspect and only grudgingly permitted. At the end of the seventeenth century, although courts of equity freely considered extrinsic evidence, including direct evidence of intent—because judges "could distinguish what weight and stress ought to be laid on such evidence"—common-law courts would not allow evidence of intent because "it [was] not safe to admit a jury to try the intent of the testator." Thayer, *supra*, at 429–31 (quotation omitted).

To avoid declaring bequests void for uncertainty, courts began to consider evidence of the testator's intent with respect to so-called equivocations, often referred to as latent ambiguities, which involve instruments that describe a person or thing in terms equally applicable to more than one when the surrounding circumstances are taken into account. *E.g., Wheaton v. Pope*, 91 Minn. 299, 306, 97 N.W. 1046, 1048 (1904) (stating the rule that extrinsic evidence may be used to remove a latent ambiguity that arises because the will " 'names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that answer such name or description' ") (quoting *Patch v. White*, 117 U.S. 210, 217, 6 S.Ct. 617, 620,

29 L.Ed. 860 (1886)). Courts also created exceptions permitting direct evidence of the testator's intent in certain other circumstances. *E.g., In re Estate of Wunsch*, 177 Minn. 169, 171, 225 N.W. 109, 110 (1929) (finding admissible the attorney's testimony about the testator's intent because "it is settled that oral testimony is competent to prove intentional pretermission" (citation omitted)); *Wheaton v. Pope*, 91 Minn. at 307, 97 N.W. at 1049 (allowing scrivener's testimony about the testator's intent and instructions to clear up an ambiguity that arose because of an inaccurate metes and bounds description). *See generally* 9 John Henry Wigmore, *Evidence in Trials at Common Law* §§ 2474–2477 (James H. Chadbourn rev.1981) (noting exceptions for erroneous description, "rebutting an equity," and the *falsa demonstratio non nocet* principle).

Notwithstanding the developments for admission of evidence showing the testator's intentions, some authorities continue to state that no direct evidence of intent should be considered when construing patent ambiguities, i.e., those contradictions appearing on the face of the instrument. *See* 4 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 32.9 (3d ed.1961) (listing the various authorities supporting this rule). This rule calls for closer examination because, as Bowe and Parker recognize, "it undoubtedly would be a step forward in the development of our law to discard the distinction [between patent and latent ambiguities] entirely." *Id.* § 32.7, at 258. As appellant observes, no Minnesota court has determined whether all ambiguities can be construed using direct evidence of the testator's intention, but the supreme court has cautiously noted that such evidence is available for some cases of ambiguity. *In re Estate of Chase*, 182 Minn. 271, 274, 234 N.W. 294, 295 (1931) (refusing to consider "declarations of the testator directly expressing his testamentary intentions" because the court found no ambiguity or equivocation in the will).

■ We are satisfied that the trial court correctly denigrated the usefulness of a distinction between patent and latent ambiguities for determining what type of extrinsic evidence should be considered when construing ambiguous or contradictory provisions. Because it is reasonable for the Minnesota judiciary to weigh evidence of the testator's declarations of intent, the basis for the patent/latent distinction appears outmoded. *See supra* (noting the different approaches of the common-law courts and courts of equity). Moreover, we appreciate, in general, the frustration scriveners encounter in trying to express perfectly their client's wishes, which frequently creates ambiguities, such that justice requires consideration of extrinsic evidence to determine intent. *Cf. Testator's Declarations of Intent Excluded in Resolving Patent Ambiguity,* 14 Stan. L.Rev. 409, 411 (1962) (noting that when Lord Bacon originated the patent/latent distinction, language was viewed as unquestionably precise and no one recognized the relative nature of words).

As the trial court correctly observed, a basic change in the outlook of the law is evident on related topics. Importantly, we no longer view testimony about the testator's declarations of intent as inherently unreliable. *See* Minn. R. Evid. 617 ("A witness is not precluded from giving evidence of or ·concerning any conversations with * * * a deceased * * * person merely because the witness is a party to the action or a person interested in the event thereof."); *id.* 804(b)(5) (allowing hearsay if the court finds the evidence trustworthy, pertinent to a material fact, more probative than other evidence reasonably obtainable, and necessary to serve the interests of justice).

In looking to authorities, we find the primary reflection of modern law enunciated by our colleagues in Wisconsin:

If, after examining the surrounding circumstances at the time of the will's execution an ambiguity or inconsistency persists, we may resort to extrinsic evidence and the rules of will construction. *In re Estate of Lohr,* 174 Wis.2d 468, 497 N.W.2d 730, 736 (1993) (citation omitted); *see also Wilson v. Flowers,* 58 N.J. 250, 277 A.2d 199, 206 (1971) ("[D]irect statements of intention should be admitted no matter what the form of the ambiguity.").

■ Subject to prospective limitations, none of which bears on the immediate case, the scrivener's testimony may be employed to ̇resolve contradictory provisions in the will. *In re Estate of Lohr* suggests the first limitation: The surrounding circumstances should be examined first and direct evidence of the testator's intention should be considered only if the ambiguity or contradiction persists. 497 N.W.2d at 736. The Arizona Court of Appeals suggests the second limitation: Extrinsic evidence is to be used to determine what the testator meant by the words used, not to determine an intent that cannot be found in the words employed in the instrument. *In re Estate of Smith,* 119 Ariz. 293, 580 P.2d 754, 757 (1978) (stating the general rule that extrinsic evidence is "not admissible to show what the testator intended to say, but rather to show what he intended by what he did say" and allowing "the statement of the attorney who drew up the will" to show what the testator meant by the words "money and coin collection"). In this case, the trial court construed what the testator meant by the words she used, and the surrounding circumstances as posed by appellant permit only speculation regarding the desires of the testator. *Cf. DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (1997) (stating there is no issue of material fact if the nonmoving party "presents evidence which merely creates a metaphysical doubt as to a factual issue").

Finally, we find little or no modern authority to contradict our determination of the law in this case. Appellant cites *In re Gollhofer's Estate,* 111 N.Y.S.2d 831, 833–34 (1952), which indeed determines that direct evidence of a testator's intent cannot

be employed to determine what the testator intended by a bequest of "Twenty five ($2500) Dollars." *Id.* at 833. *But see Schlottman v. Hoffman,* 73 Miss. 188, 18 So. 893, 895–96 (1895) (declaring a bequest of "$5 00" to be patently ambiguous and allowing evidence of the surrounding circumstances and the testator's instructions to the drafter to find the intent was to bequeath five dollars and not five-hundred dollars). The absence of any discussion of the basis for the rule excluding direct evidence of intent diminishes the weight of *Gollhofer* and other modern recitations of the rule. *Compare, e.g., Estate of Utterback,* 521 A.2d 1184, 1188 (Me.1987) (adhering without explanation to the assumption that testimony concerning oral declarations of intent is inherently unreliable), *with Wilson v. Flowers,* 277 A.2d at 206 (explaining the reasons for abandoning the old common-law rule).

Nothing in the history of Minnesota case law suggests cause for blinding the courts to evidence of the testator's intention in cases where the will contains contradictory language. *See In re Estate of Wunsch,* 177 Minn. at 173–74, 225 N.W. at 110–11

(allowing into evidence the attorney's testimony about the testator's intent); *In re Estate of Arend,* 373 N.W.2d 338, 344 (Minn.App.1985) (allowing testimony by the attorney who drafted the will concerning his conversations with the testator). Likewise, Minnesota statutes do not prohibit courts from considering such testimony. *Cf.* Okla. Stat. tit. 84, § 174 (1991) ("[E]vidence of the declarations of the testator as to his intention cannot be received.").

## DECISION

In finding that there are no genuine issues of material fact and construing the testator's contradictory language, the trial court properly considered direct evidence of the testator's intention.

**Affirmed.**