**In re ESTATE OF Dennis GLOEGE, a/k/a Harvey Dennis Gloege, Decedent.**

No. C8–01–1802.

Court of Appeals of Minnesota.

Aug. 13, 2002.

Peter A. Donohue, Michael E. Novak, Donohue Novak at Law, St. Cloud, for appellant Meade.

John C. Lervick, Swenson, Lervick, Syverson, Anderson, Trosvig, Jacobson, P.A., Alexandria, for respondents John and Michael Gloege.

Considered and decided by PETERSON, Presiding Judge, SCHUMACHER, Judge, and MINGE, Judge.

## OPINION

MINGE, Judge.

In this probate dispute, appellant personal representative argues that certain security accounts are part of the probate

estate and thus should not have been paid to respondents. Appellant claims that (a) decedent did not satisfy the registration requirements for a transfer-on-death account under Minn.Stat. §§ 524.6–301 to 524.6–311 (2000); and (b) even if decedent properly registered the accounts in beneficiary form, provisions in decedent's will revoked the beneficiary registration. The trial court rejected these claims. We affirm.

## FACTS

Decedent Dennis Gloege died testate on May 25, 1998. He was survived by appellant Rose Meade, his widow and personal representative, their minor son, Nicholas Gloege, and his two adult sons from a previous marriage, respondents John and Michael Gloege.

In December 1988, decedent opened an American Century Simplified Employee Pension Individual Retirement Account. This was done by completing a document entitled "Account Registration Form." No readable copy of this form was provided to the trial court. The microfilm copy accepted into evidence contains a fourth paragraph entitled "Designation of Beneficiary," with the following language: "In the event of my death, pay the balance of my IRA to." The blank space that follows contains the handwritten name "John Gloege" with his address. The decedent signed the document. Decedent never changed this beneficiary designation, and the periodic account statements never listed any beneficiary or any words indicating that this account was held subject to a transfer-on-death arrangement.

In May 1996, decedent executed a document entitled "IDS Transfer on Death Account Agreement" with IDS/American Express, covering five mutual fund accounts and designating John H. Gloege, Michael D. Gloege, and Nicholas Gloege

as the beneficiaries of all five accounts upon decedent's death. Decedent never changed these beneficiary designations. The periodic account reports came with a coversheet, which was addressed to the decedent, Dennis Harvey Gloege. This coversheet listed the five mutual fund accounts with only his name. On the separate mutual fund account statements, the mutual fund was designated and the owner's name was listed as "Dennis Harvey Gloege Tod."

On May 18, 1998, just one week before his death, decedent revised his will, devising $80,000 in cash to John Gloege and $60,000 in cash to Michael Gloege. In each case, the devise was to be adjusted if the son received more or less than $20,000 in nonprobate assets. The will made no reference to the American Century Account or the IDS/American Express mutual fund accounts or any transfer-on-death arrangements.

When decedent died, the American Century Account had a balance of $15,397.36, and the five IDS/American Express accounts totaled $113,596.48. According to appellant, if the transfer-on-death accounts were paid to the sons, the mechanics of the adjusting clause of the will would be compromised, and respondents would receive more than was contemplated under the will.

In October 2000, appellant filed a schedule of nonprobate assets with the court, describing the American Century Account as a nonprobate asset "payable upon death to John Gloege his son pursuant to a beneficiary designation." In December 2000, appellant petitioned for an order approving an accounting and a distribution of the property in decedent's estate. In that document, appellant considered the American Century Account and the IDS/American Express accounts to be probate assets. Respondents objected to the proposed dis-

tribution because it reduced their inheritance by the amount that each had already withdrawn from the IDS/American Express accounts.

During the March 2001 hearing, the parties agreed that their dispute turned on whether the American Century and IDS/American Express accounts were probate assets, and the parties agreed to submit affidavits and memoranda in support of their positions. In August, the trial court ruled that the American Century and IDS/American Express accounts were nonprobate assets that were properly transferred to respondents. The court reasoned that all of these securities accounts were properly registered securities under Minnesota's Uniform TOD (Transfer on Death) Security Registration Act, Minn. Stat. §§ 524.6–301 to 524.6–311 (2000), that respondent John Gloege was the beneficiary of the American Century account while all three sons, including both respondents, were beneficiaries of the IDS/American Express accounts.

## ISSUES

I. Does the execution ·of a securities-account agreement and application form, designating beneficiaries, constitute registration in beneficiary form under the Uniform TOD Security Registration Act?

II. If so, did decedent's will revoke the beneficiary designations?

## ANALYSIS

### I.

■ The application of a statute to undisputed facts is a legal question, which an appellate court reviews de novo. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn.1996). Such is the situation in this case.

■ Various methods of owning assets have been developed that do not require the formalities of probate to transfer ownership after death. With respect to real estate, joint tenancy and life estate arrangements are the best known and most widely used. In the 20th century, these and other forms of personal property ownership became commonplace. *See* Unif. TOD Sec. Registration Act, Prefatory Note, 8B *U.L.A.* 386–87 (2001). A will does not dispose of nonprobate assets such as property "payable on death" (POD) or "transferred on death" (TOD) to a beneficiary. 6A Steven J. Kirsch, *Minnesota Practice* § 59.4 (2002).

■ Several terms are important in the POD and TOD setting. A "beneficiary form" is a security-registration arrangement in which the owner of a security provides that such security is to go to a designated person when the owner dies. Minn.Stat. § 524.6–301 (2000). "Register," in the case of uncertificated securities, means "to initiate or transfer an account showing ownership of securities." *Id.* The owner registers a security in beneficiary form by designating a beneficiary who will take ownership when the owner dies. Minn.Stat. § 524.6–304 (2000). The owner may use the words "transfer on death," "TOD," "pay on death," or "POD" after his name and before the beneficiary's name. Minn.Stat. § 524.6–305 (2000). When the owner dies, the security passes to the beneficiary, and only if no beneficiary survives the owner does the security pass to the owner's estate. Minn.Stat. § 524.6–307, subd. 1 (2000).

■ Appellant claims that section 524.6–305 requires that the registering entity list, on both the account certificate *and on every statement,* (1) the owner's name; (2) words of intent, such as "transfer on death" or "TOD"; and (3) the beneficiary's name. Appellant argues that, be-

cause the periodic statements issued by American Century and IDS/American Express list no beneficiary, the statute's requirements were not met.

Appellant's position finds no support in the law. The language in Minn.Stat. § 524.6–305 is as follows:

Registration in beneficiary form *may* be shown by the words "transfer on death" or the abbreviation "TOD," or by the words "pay on death" or the abbreviation "POD," after the name of the registered owner and before the name of a beneficiary.

(Emphasis added.) Minn.Stat. § 524.6–308(b) (2000) provides:

By accepting a request for registration of a security in beneficiary form, the registering entity agrees that the registration will be implemented on death of the deceased owner as provided in sections 524.6–301 to 524.6–311.

And Minn.Stat. § 524.6–310(a) (2000) provides:

A registering entity offering to accept registrations in beneficiary form may establish the terms and conditions under which it will receive requests (i) for registrations in beneficiary form, and (ii) for implementation of registrations in beneficiary form * * *.

The comment to section 8 of the Uniform TOD Security Registration Act makes clear the discretion of the mutual fund:

It is to be noted that the "request" for a registration in beneficiary form may be in any form chosen by a registering entity. The Act does not prescribe a particular form and does not impose record-keeping requirements. Registering entities' business practices, including any industry standards or rules of transfer agent associations, will control.

8B *U.L.A.* 410 (2001).

■ The plain language of section 524.6–305 requires merely that the securi-

ty owner name a beneficiary who will own the account when the owner dies. The statute does not mandate that the periodic statements list the beneficiary's name after words indicating transfer on death; the statute only suggests that the owner "may" use words such as "transfer on death" in the application. As the comment indicates, the uniform act gives the mutual fund company substantial latitude in drafting and structuring forms and documents.

In this case, decedent designated John Gloege as the beneficiary when decedent opened the American Century account in December 1988. This was sufficient to register that account in beneficiary form under the statute. Similarly, decedent designated respondents as beneficiaries and used a special "transfer on death" account agreement form when he opened the IDS/American Express accounts in May 1996. The fact that the periodic statements issued by both companies did not include respondents' names does not affect the validity of the registration. The registration documents are abundantly clear. These companies obviously felt that they had an adequate process for establishing effective, enforceable TOD accounts.

To let periodic statements for securities or street accounts override the initial agreement between the investor and a registering entity would open up possibilities for inconsistency and mischief. A minor error by an obscure clerk in the bowels of a large fund could override a carefully planned and clear agreement. Of course, it may be desirable and a good practice to have the transfer-on-death arrangement clearly shown on the periodic statement, at least in some abbreviated form. This would serve as a reminder to the owner that he or she has established such an

account, and it would avoid confusion among beneficiaries and heirs.

Appellant points to the formal requirements of creating joint tenancies and mechanic's liens and suggests that the registration requirements of the Minnesota TOD statute are similarly strict. Those situations involve interests in real estate, which historically are separate and distinct from formalities governing the transfer and devise of intangibles like investment securities. There is a national interest in a simple, uniform process with respect to mutual funds and other investments that is distinguishable from fixed assets like real estate. Here, decedent properly followed the statutory requirements for registering his securities accounts in beneficiary form: he named a beneficiary on both security applications. And in completing the IDS/American Express application, he even executed a special agreement entitled "transfer on death." We conclude that decedent adequately registered the securities in beneficiary form under .Minn.Stat. § 524.6–304 (2000).

## II.

▆▆▆ Appellant has also challenged the TOD designations, claiming that they were revoked by decedent's will. Several established principles govern this court's review of the effect of a will on such arrangements. Whether the language of a will is ambiguous is a legal question. *In re Estate of Kerr*, 520 N.W.2d 512, 514 (Minn. App.1994), *review denied* (Minn. Oct. 14, 1994). When interpreting a will, we must (1) avoid doing any violence to the language of the instrument; and (2) effectuate the testator's intent. *Estate of Cole*, 621 N.W.2d 816, 818 (Minn.App.2001). Extrinsic evidence of the testators intent should be considered only if, after viewing the surrounding circumstances, an ambiguity or contradiction persists. *Id.* at 819.

Appellant argues that decedent's will clearly intends to limit respondents' inheritance to a maximum amount. Appellant contends that her affidavit, submitted to the trial court, explains what decedent intended to leave to respondents in his will. Appellant asserts that (1) decedent changed his will to give respondents an immediate inheritance; (2) decedent wanted to avoid estate taxes; (3) decedent wanted to provide for appellant and their minor son; (4) the periodic account statements, which do not list respondents as beneficiaries, reflect decedent's intent; and (5) the TOD arrangement frustrates the effect of the will by giving respondents more money than decedent intended.

"By accepting a request for registration of a security in beneficiary form, the registering entity agrees that the registration will be implemented [when the owner dies] * * *." Minn.Stat. § 524.6–308(b) (2000).

A transfer on death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner and the registering entity and sections 524.6–301 to 524.6–311 and is not testamentary.

Minn.Stat. § 524.6–309, subd. 1(a) (2000). "A registration in beneficiary form may be canceled by a specific reference to the * * * securities account in the will of the * * * owner * * *." *Id.*, subd. 2 (2000).

▆▆▆ The initial security registrations with American Century and IDS/American Express designating beneficiaries created a contract that decedent could have revoked by notice or by a specific provision in his will. Based on a plain reading of decedent's will, decedent never revoked the beneficiary designations. Moreover, no evidence exists that decedent changed those designations before his death. The provision of the will that attempts to coordinate probate and nonprobate cash assets

makes no reference to securities, let alone mutual fund accounts that are payable on death or transferable on death. At most, the existence of TOD accounts silently marginalized this provision of the will. Moreover, claims based on estate-tax liability and other considerations are too speculative and too far removed from the mutual fund ownership determinations. Greater specificity is needed to override clear beneficiary designations in securities account agreements. Thus, the account agreements constitute a binding contract requiring that American Century and IDS/American Express transfer the securities to decedent's designated beneficiaries at decedent's death.

## DECISION

Because decedent designated respondent John Gloege as the beneficiary on the American Century application, and because decedent designated both respondents as beneficiaries on the IDS/American Express application, the Uniform TOD Security Registration Act was satisfied. Moreover, because nothing in decedent's will revoked the beneficiary designations, and because no other clear evidence shows such a revocation, the securities accounts transferred to respondents when decedent died.

**Affirmed.**