## J. W. McCauley v. Long & Co.

(Case No. 1765.)

1. PLEADING.— In pleading, the allegations of a petition should be confined to the facts which constitute the cause of action, without going into special detail; and when the evidence relied on to support the action is set forth in the pleading, it should be stricken out on exception. See statement of case for an illustration.

2. SAME.— See statement of case for a cause of action in reference to which it was held proper, on exception, to strike out allegations of fraud and malice, and a claim for exemplary damages, alleged to have resulted from defendant's having prohibited plaintiff from completing his contract. Following Houston & T. C. R'y Co. v. Shirley, 54 Tex., 127.

3. SAME.— A matter pleaded by way of defense, which constitutes no answer to the cause of action relied on by plaintiff, should be stricken out. See statement of case for an illustration of this rule.

4. EVIDENCE — PRACTICE.— Evidence was admitted, in a suit brought by plaintiff for a breach of a written contract entered into between himself and the defendant, of the plaintiff's verbal declarations in regard to the subject matter of the contract before its execution, with a view of attaching by parol new conditions to the written contract. This evidence was afterwards excluded by the court. *Held:*

> (1) The practice of permitting illegal evidence to go to the jury, and afterwards endeavoring by oral or written directions to divert their minds from its consideration, is one that should not be encouraged.

> (2) When illegal evidence, objected to, is from any cause heard by the jury, the court should by written instruction distinctly call their attention to it and expressly direct them to disregard it.

5. PRACTICE — RULES OF COURT.— Attention called to rule 36, which requires, when decisions are cited in a brief, that not only the volume and page of the report should be given, but also the style of the case relied on.

APPEAL from Jefferson. Tried below before the Hon. W. J. Wingate, special judge.

The following statement, made by appellant, was concurred in by appellees as substantially correct:

Suit for damages for breach of contract, brought by J. W. McCauley. Plaintiff alleged in his petition in substance as follows: On the 1st day of June, 1878, plaintiff and defendants entered into a written contract in effect and substance as follows: " Plaintiff was to take charge of all logs put in the river at Yellow Bluff by defendants, as soon as put in the water at the skidways of tram road; and to run and deliver said logs into a ' boom ' near Bunn's Bluff. Said logs to be run as often as it may be practicable so as not to allow any delays that would cause the mills to run out of logs; to improve the river from time to time, as it may be necessary to run logs at all seasons of the year without any loss or delay. Such improvements as may be necessary to be made now to carry out this contract to be done as soon as possible with a reasonable amount of work. Defendants to pay plaintiff fifty cents per one thousand feet of all logs put in the river at Yellow Bluff, as per measurement of logs as put in the river at skidways, plaintiff to take charge of the same as put in the river, and to run and to deliver the same in the boom near Bunn's Bluff; defendants to pay also two-thirds of the wages of a man to be kept by both parties at Bunn's Bluff; defendants to furnish logs to boom run outs and lake when the felling of trees will not answer the purpose; this agreement is for the same time of Long & Company's lease of tram road." This contract was set out *in hæc verba* in plaintiff's petition and admitted

by defendants' answer to be the contract between the parties. Plaintiff alleged that he immediately entered upon the performance of said contract, and in part performance thereof expended from time to time in improving the river, as found necessary, the sum of $165, and in the purchase of tools and material necessary and for use in executing said contract the sum of $33.94, and in further part performance thereof took charge of twelve thousand logs put in the river at Yellow Bluff, as soon as put in the water, and ran and delivered the same into a "boom" near Bunn's Bluff (and at an expense to plaintiff of $321.88 in wages paid and supplies and provisions furnished to his hands and employees), which twelve thousand measured three million feet at the skidways at Yellow Bluff; that having entered upon the performance of said contract, plaintiff had done all things incumbent upon him by the terms thereof, and was still so engaged in the due and faithful performance thereof, when, on the 9th day of October, 1878, defendants unlawfully, and in disregard of the terms of said contract, prohibited and prevented plaintiff from any further performing the same; that notwithstanding such prohibition plaintiff again tried to perform said contract, and took charge of ten thousand logs and began running the same, when the defendants forcibly deprived him of the possession thereof, and by force prevented plaintiff from running and delivering same; that the cost of running and delivering the three million feet was eleven cents on each one thousand feet thereof, and the profit to plaintiff was thirty-nine cents upon each one thousand feet; that the lease of the tram road expired on the 9th day of November, 1880, and that said contract between plaintiff and defendants did not expire till that time. That the quantity of logs put in at Yellow Bluff during the contract period was twenty million feet. That the profits plaintiff would have made had he been permitted to run said twenty million feet of logs would have been thirty-nine cents upon each one thousand feet thereof, or in the aggregate $6,629.62; that defendants by the breach of said contract damaged plaintiff in that sum.

The following allegation in plaintiff's petition was stricken out by the court on special exception:

"Plaintiff alleges that previous to said 1st day of June, 1878, defendants procured all logs put in the water to be cribbed or rafted and bound together with binders and pins previous to being floated; that defendants paid for such cribbing and rafting fifty cents for each one thousand feet of such logs, and a further and additional sum for the running or floating thereof; whereas plaintiff ran said logs without their first being rafted, and saved the rafting expense

to defendants, and by reason of the fact that plaintiff ran the logs loose and singly without boring auger holes in them, they were much more valuable to defendants, and defendants could realize a greater quantity of merchantable timber from them; that by running said three million feet the plaintiffs had demonstrated to defendants, by actual experiment, that he could run the logs unrafted and loose, saving to defendants the cost and lumber as aforesaid."

The court on special demurrer also struck out the following allegation in plaintiff's petition: "Plaintiff alleges that defendants, in prohibiting and preventing plaintiff from continuing in the performance of and completing said contract, did so wrongfully, fraudulently and maliciously, and with the intent not only to deprive plaintiff of the profit which he would have made as hereinbefore alleged, but also to appropriate the same to themselves."

The remainder of the petition, continuing, alleged the indebtedness of the $1,500, the contract price of the twelve thousand logs actually run; also $6,629.62 as damages, the profit he would have made on the logs put in the river after the breach; also $10,000 as exemplary damages,— this last clause in the petition being stricken out by the court on special exception; the petition concluding with a prayer for $15,000 damages.

To this defendants pleaded:

1. General demurrer, which was overruled.

2. Special demurrers.

3. General denial.

. . . 5. A special answer admitting the contract as set out in plaintiff's petition to be the one between the parties, and making the following counter allegations to plaintiff's petition, in substance: "Plaintiff did not perform and fulfil his contract as alleged by him; that plaintiff, about October 1, 1878, abandoned the river and refused to further perform his contract, though defendants were at all times ready and willing so to do; that on said October 1, 1878, defendants had in the river at Yellow Bluff, and below and near there, four thousand logs, which they were anxious to have run, as their mills were running short of logs; that it was the duty of plaintiff to run said logs, but instead of doing so he abandoned the river and established a timber camp of his own, and with his employees entered into the logging or timber business on his own account, instead of employing his time and that of his employees in clearing out said river and running defendants' logs [and giving his personal attention and supervision thereto], as he was bound to do under his contract; that defendants were induced to enter into said contract solely be-

cause plaintiff represented to them that he was an experienced timber man in running and floating logs, and could run and float logs out of said river from Yellow Bluff to Bunn's Bluff, at any season of the year, and at any stage of low water; that he could, and would if employed by defendants, clear out and remove the logs, snags and other obstructions in the river so that he could run and float the logs of defendants down said river at any stage of low water; that the price to be paid plaintiff (fifty cents per one thousand feet) was largely in excess of what it was worth to run said logs when there was reasonably high water, or sufficiently high water to admit of the free and unobstructed passage of the logs, but defendants were induced and did agree to pay said price because of the representations of plaintiff that it would be necessary for him to expend a large amount of money and labor upon said river, clearing out obstructions, to enable him to run said logs at low water, which he promised he would and could do; that defendants, reposing confidence in such promises, etc., and desiring to have their logs run from Yellow Bluff to Bunn's Bluff at all times and seasons of the year and in low water, so as to keep their mill supplied at all times, etc., were induced to make said contract and to pay said fifty cents per each one thousand feet, etc.; that about October 1, 1878, defendants, seeing their mill was about to run out of logs, and having four thousand logs at Yellow Bluff, specially requested plaintiff to proceed to run the same, but plaintiff refused to do so, and then and there abandoned said contract and declared to defendants that he would not comply therewith; that by said abandonment and failure by plaintiff to comply with his said contract, defendants' mill was stopped for want of logs twenty days, at a loss to defendants of $2,000, which said sum as damages they here plead in reconvention and pray judgment for. . . .

To this answer plaintiff filed: 1. General demurrer (overruled by the court). 2. Special demurrer. . . .

Verdict and judgment for the defendants.

*Work, Greer & Work,* for appellant.

*O'Brien & John* and *T. W. Ford,* for appellees, cited on the exceptions to pleading: H. & T. C. R. R. Co. *v.* Shirley, 54 Tex., 126, 141, 142, 147, 148; Ball *v.* Britton, 58 Tex., 58, 63; 2 Addison on Torts, pars. 1386, 1392; 20 Tex., 165; 37 Tex., 242; Rule 18, 47 Tex., 620; 34 Tex., 351.

On the admission of parol declarations, and their subsequent ex-

clusion, they cited: Sayles' Pleading and Practice, 656, and 14 Tex., 463; 14 Tex., 640; 15 Tex., 430; 17 Tex., 408; 28 Tex., 15; 43 Tex., 216.

WEST, ASSOCIATE JUSTICE.— The special exception of appellees to that portion of appellant's original petition which set out at some length the former mode of rafting timber, etc., etc., going into particulars on that subject, and contrasting it unfavorably with the new and improved methods of appellant, was rightly stricken out. Evidence as to these subjects would be relevant on the question of damages, but it is not usual or proper that such matters should be set out at length and in detail in the pleadings.

All that is necessary, as has been frequently decided, is for the pleader to aver the grounds or facts on which he bases his cause of action or his defense. The evidence on which he relies to prove these facts should not be set out. The simple allegation of the facts is sufficient without going into the details of the material matters at length. Scoby v. Sweatt, 28 Tex., 713; Wells v. Fairbanks, 5 Tex., 582; Oliver v. Chapman, 15 Tex., 400; Malone v. Craig, 22 Tex., 609; Chandler v. Meckling, 22 Tex., 36; Van Alstyne v. Bertrand, 15 Tex., 177; Sayles' Tex. Pl., sec. 33; Stephen's Pl., 355.

The court, under the facts of the case, ruled rightly in striking out the allegations setting up fraud and malice, and demanding exemplary and vindictive damages. Hous. & Tex. Cent. R. R. Co. v. Shirley, 54 Tex., 127.

The exception of appellant to that part of appellees' answer that set up, by way of defense to the action, that appellant had established a log camp of his own, should have been sustained.

There was nothing in the written contract that prohibited appellant from establishing such a log camp. In defending the suit it was competent for the appellees to show, *inter alia*, that appellant neglected their business and attended almost exclusively to his own affairs, and in this manner endeavor to prove a breach or non-performance of the conditions of the contract on his part. The matter pleaded of itself was not a sufficient answer to the action, for the contract set up by appellant, and which was admitted by the appellees to be a correct statement of it, did not prohibit him from establishing an independent log camp, or prevent his giving attention to any other business. All that he was required to do was to fulfil his obligations entered into with the appellees. If he could do this, and still have time to attend to other ventures of his own, they could not complain that he engaged in such other matters. It was com-

petent for them, however, to prove his engagement in these other pursuits in order to show to the jury, in connection with other evidence, that appellant had broken the contract or had abandoned it altogether.

The court, it appears, over the objection of appellant, permitted the witness Fletcher, who was a party to the suit and one of the original parties to the written contract out of which this action grew, to detail in evidence before the jury certain verbal statements in reference to the subject matter of the contract, alleged to have been made by appellant to the witness before the contract was executed. These statements, as detailed by Fletcher, were to the effect that the appellant had represented to him that he could run or raft logs at any and *all stages of water.*

It appears, however, that at some subsequent stage of the trial, after all the evidence was introduced, that this testimony was in some manner withdrawn or attempted to be withdrawn by the court from the consideration of the jury.

How, and in what manner, or at what time, after its introduction this was done, does not certainly and distinctly appear from the record. The bill of exceptions which was signed by the judge on the subject may mean that he withdrew it from the jury, by his partial silence with reference to this branch of the subject in his charge to the jury.

It may also be inferred that it was possibly withdrawn by the judge orally from the consideration of the jury as soon as all the testimony had been introduced. Or it may be, and this from the record appears most probable, that it was not in any manner withdrawn from the consideration of the jury until the arguments of counsel on both sides had been heard.

There are also some expressions in the main charge of the court that may possibly have been intended to distract the attention of the jury from this improper evidence. They are there told, more than once, that they must look alone to the terms of the contract, and like words are used.

Be this as it may, we are of the opinion that the court erred in permitting this evidence to go to the jury in any aspect of the case as disclosed by the record now before us. The rights of appellant could not but have been seriously prejudiced in the eyes of the jury by the admission of this illegal evidence in relation to a matter so important, and which sought to attach, by parol evidence, new and important conditions to the original written contract.

The practice of permitting illegal or irrelevant evidence, when

objected to, to go to the jury, and afterwards endeavoring by oral or written directions, or in some such mode, to divert the attention of the jury from its consideration, is one that should not be encouraged. It will sometimes, though very rarely, happen, even when proper and legal objections have been promptly raised to its admissibility, that improper evidence is admitted, and is heard by the jury. The court in every such instance should, in a written instruction, distinctly call the jury's attention, specially, to this illegal evidence, and expressly direct them to disregard it. In this manner, the mischief caused by its improper admission can in some cases be in part, but only in part, prevented.

There are a number of other errors assigned, some of which seem not to be without merit, but in the view we have taken of the case, as the questions raised by these assignments of error may not again arise on another trial, we do not deem it necessary to consider them further at present.

The brief of appellees, in citing the decisions relied on, simply gives the volume of the report and page. In almost every instance the name of the case cited is omitted. The rule on this subject (Rule 36, Sup. Ct.) intended, when decisions are cited, that not only the volume and page of the report should be given, but also the name of the case relied on. A failure thus to cite fully the authority imposes additional and sometimes fruitless labor on the court, and is a violation of the above rule.

Special attention is now called to this matter, with the hope that hereafter, in this respect, the rule in question will be closely followed.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered February 8, 1884.]