**CURRY v. TEXAS CO. et al. (No. 386.)**

Court of Civil Appeals of Texas. Eastland. Jan. 13, 1928.

Rehearing Denied June 22, 1928.

1. **Limitation of actions** ⟐⟶177(3)—Reformation of contract on ground of mutual mistake held barred, where plaintiff did not allege discovery of mistake within statutory period and that he was not negligent.

Reformation of contract on ground of mutual mistake was barred by four-year statute of limitation, where contract had been in existence for more than four years at time suit was filed, and plaintiff did not plead facts showing his lack of knowledge of mistake and his discovery thereof within period of time not barred when suit was filed, and that he was not negligent.

2. **Contracts** ⟐⟶170(1)—Where there is doubt regarding interpretation of contract, court will adopt construction given by parties.

Where there is any doubt about interpretation of contract, that construction which has been given to it by parties in its execution will be adopted by court.

3. **Appeal and error** ⟐⟶882(8)—Defendants cannot urge on appeal that letters showing liability for royalties on gas cannot be considered against them, where they invited trial court to act thereon in deciding case.

Where letters showing delivery of gas amounting to certain number of cubic feet were introduced without objection, and defendants invited trial court to act thereon in deciding case in which plaintiff was suing to recover royalties on gas, they cannot urge on appeal that such letters cannot be considered against them.

4. **Mines and minerals** ⟐⟶79(1)—Royalty provision in lease held to give lessee authority to sell gas.

Royalty provision of lease, stating that lessee agreed with royalty owner to keep account of casing-head gas as saved and utilized or as sold, rendering monthly statements, and to pay certain price for all casing-head gas sold *held* to give lessee right and authority to sell gas.

5. **Mines and minerals** ⟐⟶81—Royalty owner, having authorized lessee to sell gas, could not recover from purchaser unless purchaser bound himself to assume lessee's obligation to pay royalties.

Royalty owner, having authorized lessee to sell gas, could not recover against purchaser unless purchaser by contract bound himself to assume obligation of lessee for payment of royalties under contract.

6. **Appeal and error** ⟐⟶1172(1)—Court having erroneously held petition was sufficient as to certain defendants, and having committed material trial error against plaintiff in their favor, appellate court cannot affirm judgment for plaintiff for part of sum demanded on ground that petition showed no cause of action, and cannot reverse and render judgment for plaintiff, where petition was insufficient.

Trial court having refused to sustain demurrer as to certain defendants, and having held plaintiff's petition was sufficient as to them, and having on trial committed material error against plaintiff in their favor, appellate court cannot affirm judgment for plaintiff for part of sum demanded on ground that plaintiff's petition as to such defendants showed no cause of action, and cannot reverse and render in favor of plaintiff against such defendants, where petition was not sufficient to support judgment.

7. **Mines and minerals** ⟐⟶79(1)—Assignment by lessee does not relieve him of obligation to pay royalties without provision to that effect.

Assignment by lessee does not relieve him of specific obligation to pay royalties, unless there is provision to that effect in contract.

On Rehearing.

8. **Evidence** ⟐⟶455—Words, "½ of ⅛ of .08 cents per thousand cubic feet," in gas lease held ambiguous, making parol evidence admissible.

Words and figures, "½ of ⅛ of .08 cents per thousand cubic feet," in contract relating

---

⟐⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to royalty on gas sold, *held* ambiguous, making parol evidence admissible to show intention of parties.

**9. Evidence ☞16—It is common knowledge that it is customary to indicate number of cents by decimal fraction of unit of value, the dollar.**

It is common knowledge that in United States it is customary, in expressing number of cents in figures, to indicate sum by decimal fraction of unit of value, the dollar.

**10. Evidence ☞451—Where ambiguity is patent, parol evidence is admissible to show parties' intention.**

Where ambiguity in contract is patent, parol evidence is admissible to show intention of contracting parties.

**11. Contracts ☞147(1)—Court should ascertain parties' intention and give contract force accordingly.**

Ultimate purpose of court should be to arrive at real intention of parties to contract and to give contract force accordingly.

**12. Evidence ☞450(5)—If contract is not clearly unambiguous rule that contract should be sole evidence of parties' intention should not be permitted to defeat intention which can be proven by parol.**

Where contract is not clearly unambiguous, rule that written contract shall be sole evidence of intention of contracting parties should not be permitted to defeat an intention and understanding which can be clearly proven by parol and to lead to conclusion which is absurd.

**13. Contracts ☞152—All words and figures of contract should be taken together and harmonized if possible.**

All words and figures of contract should be taken together, their use and arrangement considered, and they should be harmonized if possible.

**14. Mines and minerals ☞79(7)—Where royalty contract contained patent ambiguity, evidence regarding construction placed on contract by parties was admissible.**

Where contract regarding royalty to be paid on gas sold contained patent ambiguity regarding price to be paid, plaintiff could introduce evidence of construction placed on contract by parties, tending to show what they actually meant and understood by terms employed.

**15. Mines and minerals ☞79(7)—Pleadings held to sufficiently set up patent ambiguity in contract regarding royalty on sale of gas and practical construction consistent with plaintiff's theory of meaning.**

Complaint in action to recover royalties on sale of gas, pleading contract in hæc verba, and seeking to explain part fixing rate of royalty on gas by saying that consideration was and is "one-half of one-eighth of eight cents," where contract read "½ of ⅛ of .08 cents" and alleging what plaintiff conceived to be legal effect of term in contract, and that defendant had been paying for gas at rate of one-half of one-eighth

of eight cents, *held* to set up patent ambiguity and to allege practical construction consistent with plaintiff's theory of meaning and intention of contract.

**16. Pleading ☞381(1)—In absence of special exception, plaintiff was entitled to prove facts sustaining conclusion pleaded.**

Although allegation, "and by them so construed that the consideration was and is one-half of one-eighth of .08 cents," where contract regarding royalty on gas sold specified "½ of ⅛ of .08 cents," would not be good under special exception in its absence plaintiff was entitled to prove facts to sustain conclusion pleaded.

**17. Appeal and error ☞1177(7)—Though there is insufficient evidence to support judgment, where it appears probable that cause has not been fully developed, appellate court will on reversal remand rather than render it.**

Even though there is insufficient evidence to support judgment, yet if it appears probable that cause has not been fully developed, appellate court will on reversal in interest of justice remand rather than render it.

Funderburk, J., dissenting on rehearing.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Action by J. C. Curry against the Texas Company and others, in which defendant named filed a cross-action. From the judgment, plaintiff appeals. Affirmed in part, and in part reversed and remanded.

Preston Martin, of Weatherford, and Hawkins & David, of Breckenridge, for appellant.

H. S. Garrett, of Fort Worth, and Goggans & Allison, of Breckenridge, for appellees.

PANNILL, C. J. The parties to this suit occupy in this court the same position as in the trial court, and will be designated in the same manner. The appellant Curry brought this suit against the Texas Company, Hanlon Gasoline Company, G. O. Bateman, Mike Scott, and A. York; the purpose and object of the suit being to recover the royalties provided in the following contract between the plaintiff and the defendant the Texas Company:

"The Texas Company agrees with the royalty owner to keep account of the casing-head gas as saved and utilized, or sold as aforesaid, rendering monthly statements if requested, and to pay to the royalty owner ½ of ⅛ of .08 cents per one-thousand cubic feet, corrected to atmospheric pressure and 60 deg. F. temperature, for all casing-head gas from the above-described land so saved and utilized or sold by the company not including any quantity used in its operations on said land, the company being free to use casing-head gas for such purposes without charge. Payments will be made quarterly, and the company at any and all rea-

sonable times will allow the royalty owner to inspect its meters."

The petition averred that the Texas Company had caused to be drilled on said lease a certain well, and that from said well large quantities of casing-head gas had been produced, which had been run to the plant of the defendant Hanlon Gasoline Company. The petition alleged, by way of explanation, that the said contract was executed under an agreement between the plaintiff and the Texas Company, whereby the latter agreed and bound itself to pay to the plaintiff as a royalty owner ½ of ⅛ of eight cents per thousand cubic feet for all casing-head gas made and produced from said lease, and that by inadvertence and mutual mistake it was written in said contract in figures as hereinabove set out, that it was the intention of all the contracting parties at the time that the Texas Company was to pay the plaintiff at the rate of ½ of ⅛ of eight cents per thousand cubic feet, and that said construction had been given the said agreement by the parties at all times thereafter, and that the Texas Company had under said contract paid the plaintiff at the rate of ½ of ⅛ of eight cents per thousand cubic feet for gas saved and produced from other wells on said leased premises. The allegations attempting to fix liability upon the Hanlon Gasoline Company were that said company had at all times used the gas produced from said well and converted same to its own use and benefit, with actual and constructive knowledge of plaintiff's said contract, and that, in taking said gas, it was operating with the Texas Company. As to the other defendants, Bateman, Scott, and York, the allegations are that they are claiming some interest in said well and the gas and oil produced therefrom, which interest is being claimed through their codefendant the Texas Company; that plaintiff is unable to state the interest of said defendants, inasmuch as no contract or assignment appears of record, but, if said defendants have any interest in said oil, gas, and other minerals produced from said well, they acquired the same from the defendant the Texas Company.

Separate answers were filed by the defendants the Texas Company and Hanlon Gasoline Company, and a joint answer by Bateman, Scott, and York. It will be unnecessary to notice the various defenses set up by the several defendants, except that the Texas Company filed a cross-action in which it was specifically alleged that the defendant Bateman drilled said well under an assignment to him from the Texas Company of 40 acres of the leasehold held by the Texas Company under the plaintiff, and that in said assignment said Bateman bound himself as assignee to pay to said Curry any and all royalties accruing from said land, and that thereafter the plaintiff, Curry, having made claims

for royalties from the well, the defendants Bateman, Roberts, and Mike Scott executed and delivered to the Texas Company a bond of indemnity for the claims and demands of the plaintiff, and specifically agreeing to pay off and satisfy any judgment which was rendered against the Texas Company.

The several defendants demurred to the plaintiff's petition, all of which were overruled except the special exceptions of the Hanlon Gasoline Company, which were sustained, and, the plaintiff declining to amend, that company was dismissed from the suit.

There was a trial to a jury as to the remaining defendants, and the plaintiff introduced the contract sued on, together with proof that a well had been drilled by the defendant Bateman, which produced large amounts of gas, and that this gas was being taken and used by the Hanlon Gasoline Company. Letters were introduced from the Hanlon Gasoline Company to the plaintiff, showing the production of gas by the well in question and the delivery of said gas to said Hanlon Gasoline Company, amounting to 2,696,-947,000 cubic feet. No objection was made to these letters by either of the defendants. Other testimony was introduced by plaintiff to the effect that the contract when negotiated was, in fact, that the Texas Company should pay the plaintiff at the rate of ½ of ⅛ of eight cents per thousand cubic feet, and that this contract was made about the first of April, 1919, and that thereafter the Texas Company drilled and produced oil and gas from said lands and paid the plaintiff at the rate which was agreed upon; that is, at the rate of eight cents per thousand cubic feet. A letter from the Texas Company was introduced, stating plainly that the agreement was for payment for royalty on gas on the basis of ⅛ of eight cents. Plaintiff testified he did not know of any other claim being made until Bateman, after the well was drilled by him, told the plaintiff that he could not recover under the contract more than ½ of ⅛ of eight one-hundredths of one cent and that no amount had been paid to plaintiff for royalty on gas produced from said well called the Bateman well, although a demand had been made therefor.

The statement of facts shows that, during the introduction of plaintiff's testimony and prior to the time plaintiff closed his case, the following occurred:

"Mr. Allison: The defendants G. O. Bateman, Mike Scott, and Jack B. Robert agree, if any judgment is rendered in this case against the defendant the Texas Company, judgment shall be rendered in favor of the Texas Company against said defendants Jack B. Robert, Mike Scott, and G. O. Bateman, for the amount of the judgment against the Texas Company.

"Mr. Garrett: We believe the court should instruct a verdict for the plaintiff for the amount of the alleged royalty as per the written contract, the actual amount is simply a

matter of mathematical figures, one-half of one-eighth of eight-hundredths cents per thousand cubic feet."

At the conclusion of the testimony the defendants presented a request for an instructed verdict in their favor, and, if that was denied, in the alternative, the defendants requested the court to instruct a verdict for the amount of alleged royalty as per the written contract, ½ of ⅛ of eight-hundredths of one cent per thousand cubic feet, the Texas Company to have its recovery over and against the defendants sued by it.

In response to this motion, the court instructed a verdict for plaintiff for the sum of $153.06 on the basis of ½ of ⅛ of eight one-hundredths of a cent per thousand cubic feet. Under plaintiff's contention as noted above, he would have been entitled to approximately $14,000. The difference is therefore material.

In plaintiff's appeal, it is loudly and emphatically asserted that the court was in error in construing the contract as contended for by the defendants to be for the payment of ½ of ⅛ of eight one-hundredths of a cent per thousand cubic feet, but claimed that the contract should have been construed to provide for the payment at the rate of ½ of ⅛ of eight cents per thousand cubic feet, both on its face and because of the construction to that effect given to the contract by the parties, the plaintiff and the Texas Company, over a period of years from 1919, to and including the trial of the case, and that, if mistaken in that, plaintiff was entitled to reform the contract so as to make it express the true agreement of the parties.

All of these contentions are aggressively opposed by the defendants on the ground that the contract is on its face unambiguous; that the petition failed to allege any ambiguity therein, and therefore evidence as to its construction by the parties cannot be given any effect; that the reformation is barred by the four years' statute of limitation, which was duly pleaded; and that the court could only take the contract as written, which the defendants insist plainly provides for payment at the rate of ½ of ⅛ of eight one-hundredths of a cent. In addition, if mistaken as to these matters, the defendants claim that no evidence whatever was introduced by the plaintiff as to the amount of gas produced from said well, and that the letters of the Hanlon Gasoline Company were hearsay and not admissible against any of the defendants, and, though admitted without objection, cannot be given any effect on appeal; that, disregarding said letters, there is no evidence in the record upon which a judgment could be entered for the plaintiff for any amount.

[1] We will attempt to state our conclusions as to the legal points presented. We have concluded that the defendants' plea of

limitation as against the allegation of mutual mistake was well taken. While plaintiff shows by his testimony a valid excuse for not bringing his suit for reformation sooner, he made none in his pleadings. The contract having been in existence for more than four years at the time suit was filed, it was necessary for him to plead the facts showing his lack of knowledge of the mistake in the contract, his discovery thereof within a period of time not barred when the suit was filed, and that he was not negligent. The authorities in regard to this matter have been reviewed at length in an opinion by Associate Justice Leslie of this court in the case of Hardin v. Hardin, 1 S.W.(2d) 708. But we believe that the allegations, the substance of which are stated above, are sufficient to show an ambiguity in the contract so as to admit evidence of the true contract between the parties and the construction placed thereon by them. San Antonio Machine & Supply Co. v. Allen (Tex. Civ. App.) 268 S. W. 533.

[2] It is true that plaintiff did not directly allege that the contract was ambiguous, but the contract itself, taken in connection with the allegation as to what was the real intention of the parties and the construction placed thereon by them, state such facts as show an ambiguous contract. The words and figures used, "½ of ⅛ of .08 cents per thousand cubic feet," when taken literally, do not mean anything, and must be construed to arrive at the true intent thereof. Use of the plural "cents" renders it uncertain as to how many cents were meant. If the pleadings were sufficient, the evidence detailed, which was uncontradicted, shows that the parties intended by this contract to provide for royalty at the rate of ½ of ⅛ of eight cents per thousand cubic feet. It is too well settled to even require the citation of authority that, where there is any doubt about the interpretation of a contract, that construction which has been given to it by the parties in its execution will be adopted by the court. As stated by the Supreme Court of the United States in the case of Cavazos v. Trevino, 6 Wall. (U. S.) 773, 18 L. Ed. 813, in referring to the rule, "Safer testimony can hardly be presented in relation to any transaction occurring in human affairs."

See R. C. L., vol. 6, p. 852, § 241, and 13 C. J. p. 456, where the authorities are collated, including many from our own jurisdiction.

[3] While agreeing with counsel for the defendants that the letters of the Hanlon Gasoline Company could not ordinarily be here considered as evidence against the defendants, even though admitted without objection by the defendants, under the rule announced in Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, which decision has been consistently followed since its rendition, and that without these letters there existed in the evidence no

sufficient predicate for a judgment in favor of plaintiffs for any amount for gas, yet, in view of the admission made by defendants' counsel during the trial, and which has been by agreement and consent incorporated in the statement of facts, we are unwilling to say that the trial court was not probably induced by the said statement of counsel to believe that the letters were entitled to be considered as against all the defendants, and to act thereon in instructing a verdict as he did. The course pursued by the counsel for defendants on the trial as reflected by the statement of facts was well calculated to induce both the court and opposing counsel to believe that the amount of gas produced from the well in question had been established by the testimony introduced and was not in question. It is our judgment that justice will not permit us to affirm the judgment rendered on the ground as urged that plaintiff was not entitled to a judgment for any amount, and that, having recovered more than he was entitled to in the trial court, is therefore without just ground for complaint. In this case, under the record as presented, the defendants are in no position to urge here that the letters of the Hanlon Gasoline Company cannot be considered against them, inasmuch as they clearly invited the trial court to act thereon in deciding the case.

[4] It appears that the plaintiff would have a case against Bateman, Scott, York, and Hanlon Gasoline Company upon one of two theories only: The first, that they were assignees under the lease under the well-established rule that a provision in a mineral lease for the payment of royalty is a covenant which runs with the land, and is binding upon the assignees (Pierce Fordyce Oil Co. v. Woodrum [Tex. Civ. App.] 188 S. W. 245); or that they were naked trespassers, and, by converting the gas, had deprived plaintiff of his royalty. But the facts alleged negative both theories with respect to all the defendants just named. While the term "conversion" is used, it is distinctly alleged as a matter of fact that all of said parties were taking the gas under some sort of contract with the Texas Company, and sought to recover only under the contract and for the contract price. It was not alleged that they were assignees of the Texas Company, nor that said defendants held under a sublease. The royalty provision quoted clearly gives to the Texas Company right and authority to sell the gas. Hager v. Stakes, 116 Tex. 453, 294 S. W. 835, loc. cit. 839, 841.

[5, 6] Having authorized the Texas Company to sell the gas, he could not recover against a purchaser from the latter unless that purchaser by contract bound himself to assume the obligation of the Texas Company for the payment of royalties under the contract. Potts v. Burkett (Tex. Civ. App.) 278

S. W. 471. Therefore, if the Texas Company sold the casing-head gas to Bateman et al., the plaintiff could not recover from them, because that is the very thing that the contract authorized. So it is considered that the plaintiff's petition states no cause of action whatever against said defendants, and we believe that the Hanlon Gasoline Company was properly dismissed from the suit. But the trial court refused to sustain a demurrer as to Bateman, Scott, and York, and, having held that the plaintiff's petition was sufficient as to them, and having on the trial committed a material error against the plaintiff in their favor, we cannot affirm the judgment on the ground that plaintiff's petition as to them showed no cause of action. Jirou v. Jirou (Tex. Civ. App.) 136 S. W. 494. Neither can we reverse and render in favor of the plaintiff against Bateman, Scott, and York, for the reason that the petition is not sufficient to support the judgment.

[7] It is unnecessary to decide what would be the rights of Bateman, Scott, and York as assignees under the contract in question, in view of the agreement contained in the record that the Texas Company is to have judgment against them for whatever judgment may be rendered against the Texas Company, and as a practical matter this removes any question as to their position as assignees Clearly, if the writing is ambiguous as between the plaintiff and the Texas Company, the former could show the real intention of the parties to their contract, and that the parties construed it according to the true agreement, and recover from the Texas Company on its contract as actually made and construed. The assignment by a lessee does not relieve him of a specific obligation to pay royalties, unless there is a provision to that effect in the contract. Davis v. Vidal, 105 Tex. 444, 151 S. W. 290, 42 L. R. A. (N. S.) 1084; Mills and Willingham on Oil and Gas, p. 215; Western Sales Corporation v. Bliss & Wetherbee (Tex. Civ. App.) 299 S. W. 637.

We have concluded that the plaintiff's petition is sufficient to admit proof of an ambiguity in the contract and of the construction placed thereon by the parties themselves, and to permit recovery thereon as construed by the parties, and, because of the court's error in construing the contract to provide for a royalty on the basis of eight one-hundredths of one cent instead of eight cents per thousand cubic feet, the case must be reversed. In view of the matters heretofore discussed, we have decided that the just course to all parties except the Hanlon Gasoline Company would be a remand.

Therefore the judgment of the trial court as to the defendants Texas Company, G. O. Bateman, Jack Robert, Mike Scott, and A. York should be reversed and remanded for a new trial, and, as to the Hanlon Gasoline

Company, the judgment of the trial court will be affirmed, and it is so ordered.

HICKMAN, J., disqualified and not sitting.

## On Rehearing.

GROSS, Special Chief Justice. Appellees the Texas Company and Bateman, Scott, and York have filed motions for rehearing vigorously protesting this court's holding that the contract is ambiguous, and that the pleadings are sufficient to show such ambiguity and to entitle plaintiff to explain the same by parol. and to prove a practical construction by the parties consistent with his theory. Where the original opinion is adhered to it is unusual, on rehearing, to write on the questions discussed therein, but the earnestness of the argument of appellees moves us to discuss again the matters above mentioned. The parties are hereinafter referred to as they appeared in the trial court.

[8, 9] We all agree that the ambiguity, vel non, of the contractual term of the contract must be determined from the contract itself before parol evidence is admissible to explain it, but to the majority of the present court the words and figures, "½ of ⅛ of .08 cents per thousand cubic feet," suggest at once an uncertainty as to their meaning, and they are therefore, in our opinion, ambiguous. The use of the word "cents" indicates that more than a fraction of a cent and more than one cent was meant. The change from the common form of fractions to the decimal form suggests the probability that the scrivener started to write the equivalent of eight cents in decimal fractions of a dollar, and added the word "cents" by way of repetition. It is common knowledge that in the United States it is customary, in expressing a number of cents in figures, to indicate the sum by a decimal fraction of the unit of value, the dollar. Decimal fractions are seldom used in this country except to indicate fractions of a dollar, and then they are usually read as so many cents or so many mills, etc., rather than so many tenths, hundredths, thousandths, etc., of a dollar. For instance eight cents would likely be written $.08, and would be read as "eight cents" rather than as "eight one-hundredths of a dollar," which latter would be strictly correct. The usual and customary way to write, in decimals, the monetary term equivalent to "eight one-hundredths of one cent" is to indicate the amount in decimal fractions of the dollar thus $.0008, which would be eight ten-thousandths of one dollar; or, if not written in decimals, then the usual way would be 8/100 of one cent. The cent is not the unit of value, and it is unusual to indicate fractions thereof in decimals. We consider it quite significant that the use of common fractions was not continued throughout the expression. At any rate, the use of the words

and figures in such an unusual way and arrangement arouses a doubt in the minds of the majority as to what was actually intended, whether eight cents or eight one-hundredths of one cent. We consider that the terms used might be interpreted either way, and we withdraw the statement contained in the original opinion that the words and figures used, when taken literally, do not mean anything. We think the ambiguity in this contract is similar to that found by the Supreme Court of Mississippi in the case of Schlottman v. Hoffman, 73 Miss. 188, 18 So. 893, 55 Am. St. Rep. 527, in which a codicil to a will read: "To my son Jerry Hoffman the sum of $5 00 dollars and to my son Rufus Hoffman the sum of $5 00 dollars." The construction turning on the arrangement of the letters and figures, the court said:

"Now, these figures, if written in our way, would express the sum of five hundred dollars; if written with the decimal mark ($5.00), would mean five dollars; and so if written alone, without the decimal mark, either with the ciphers in the position of a numerator ($5⁰⁰), or distinctly and unequivocally removed by sufficient space from the figure '5.' An inspection of the original codicil shows the ciphers in each case connected together, removed by a distinct space from the '5'—in the one instance somewhat above, and in the other distinctly above, the line. When different sums may be expressed by the use of the same characters or figures, according to their collocation, and, as arranged, an uncertainty as to their meaning is suggested, an ambiguity appears upon the face of the instrument; and such, we think, is disclosed by the codicil in this case."

[10] Such ambiguity being patent, parol evidence is admissible to show the intention of the contracting parties. In 22 C. J. 1199, the rule is thus stated:

"Where any doubt arises as to the true sense and meaning of the words themselves, or any difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and ascertained by evidence dehors the instrument, for both reason and common sense agree that by no other means can the language of the instrument be made to speak the real mind of the party. In such a case parol evidence is admissible ex necessitate."

[11, 12] The ultimate purpose of the courts should be to arrive at the real intention of the parties to a contract, and to give the contract force accordingly. It is an important rule of construction that a written contract, plain and reflecting no shadow of doubt as to its meaning, shall be the sole evidence of the intention of the contracting parties. But, if the contract is not clearly unambiguous, the rule should not be permitted to defeat an intention and understanding which can be clearly proven by parol, and to lead to a conclusion which is absurd. We think that, where there is room for reasonable doubt as

to the meaning intended by the use of a term in a contract, as there is in this case, that the parties should be permitted to explain the same by parol.

Putting one of two possible constructions on a term in a contract, without permitting the parties to show which was actually in their minds, is taking the chance of enforcing a contract entirely different from that on which their minds met. No harm can be done in discovering and enforcing the real agreement, if such can be done, without doing violence to some principle of transcending importance. The parol evidence rule, like other rules of practice, is designed to effectuate justice, but it is not inflexible, and so many instances have arisen where its strict application would be arbitrary and oppressive that the reports contain a great body of exceptional law.

[13] We do not understand that a term is to be separated into its different words and figures, and, if each has a literal meaning, that such meaning shall be controlling. All the words and figures are to be taken together, their use and arrangement considered, and they are to be harmonized, if possible.

In 6 R. C. L. par. 231, p. 841, it was said:

"When the language of a contract is ambiguous or susceptible of several significations, conjectures are necessarily resorted to to determine the meaning of the parties; and, for this purpose, conjectures may be drawn from the subject-matter, and from the circumstances of the contract. This rule, however, is applicable only where the language in which the parties have expressed themselves, either from the terms or their arrangement, leaves their intention doubtful."

[14] If we are correct in our opinion that the contract here under consideration contains a patent ambiguity, it follows that under appropriate pleadings plaintiff may introduce evidence of a construction placed upon the contract by the parties, tending to show what they actually meant and understood by the terms employed.

The undisputed evidence is ample to show that the contract dated April 21, 1919, was drawn by the agent of defendant the Texas Company; that, before the plaintiff signed the same, the agent of the Texas Company told plaintiff that the Texas Company would pay for casing-head gas at the rate of eight cents per thousand cubic feet; that said contract was read to plaintiff and his wife by said agent, as providing for payment at that rate; that plaintiff so understood the provisions in said contract, and would not have signed same had he not so understood it; that the Texas Company repeatedly thereafter actually paid to plaintiff under said contract royalty on casing-head gas on the basis of eight cents; that under said contract said defendant paid to the children of plaintiff royalty on land embraced in said contract on

that basis; that defendant the Texas Company, on one occasion, paid under said contract less than said rate of eight cents, and, upon having the matter called to its attention, wrote a letter to a son of plaintiff, who owned an interest in the royalty on other lands embraced in said contract, acknowledging a mistake, and in effect admitting that said contract called for payment on the basis of eight cents. The expressions of that letter are significant as bearing upon the point under consideration. It will be set out in full.

"Exhibit H.

"The Texas Company.

"Texaco Petroleum Products.
"Producing Department.                247—2
"North Central Texas Division,
    "L. E. Barrows, Manager.
                        Fort Worth, Texas,
                        August 25, 1926.

"Casinghead-Gas Royalty.

"Mr. Claude A. Curry, P. O. Box No. 1187, Breckenridge, Texas—Dear Sir: Referring to our telephone conversation of this morning pertaining to casing-head gas royalty for the month of July on payments from Curry wells Nos. 9, 10 and 11.

"We find upon investigation, that the amount paid you is in error, since it was on the basis of ⅛th of net proceeds of this gas, when it should have been on the basis of ⅛th at eight cents, and will therefore arrange to issue additional checks to all royalty owners on this gas. As a matter of information, we might advise that the total amount of the ⅛th royalty as paid the Curry children amounted to $135.99, while the correct amount is $645.39.

"This error was caused by oversight on the part of the clerk handling this royalty, and we wish to thank you for calling our attention to same. Yours truly,
                        "The Texas Company,
                        "Producing Department,
                        "by L. E. Barrows.
"CC to all parties at interest.
"FLM B                                M"

We consider that such practical construction removes from the realm of conjecture the meaning of the terms employed, and the intention and understanding of the parties, and that the terms of the contract, considering their use and arrangement, are clearly susceptible of such construction.

Quoting further from Cavazos v. Trevino, 6 Wall. (U. S.) 773, 785, 18 L. Ed. 813, cited in original opinion:

"The practical interpretation which the parties, by their conduct, have given to a written instrument in cases like this is always admitted, and is entitled to weight. There is no better test of the intention of the instrument. None are less likely to be mistaken. There is no danger of too large an admission."

The rule is of universal application, and in G., H. & S. A. Ry. Co. v. Johnson, 74 Tex. 256, 11 S. W. 1113, our Supreme Court said:

"The language of the contract being doubtful the practical construction deliberately given it by both parties should control its interpretation."

See, also, Smith v. Wilcox Oil Co. (Tex. Civ. App.) 253 S. W. 642, and cases there cited.

[15] We turn then to a consideration of the sufficiency of the pleadings to set up a patent ambiguity and to allege a practical construction consistent with plaintiff's theory of the meaning and intention of the contract.

He pleads the contract in hæc verba, and shows by his pleading, and so says, that he seeks to "explain" that part fixing the rate of royalty on casing-head gas by saying that the consideration "was and is" "one-half of one-eighth of eight cents," and alleges what he conceives to be the legal effect of the term in the contract; and, after alleging that the mutual understanding, agreement and intention of the parties was on that basis, avers:

"And to show that it was the contract and mutual agreement between plaintiff and defendant as lessor and lessee in said lease contract, and it has at all times been understood and agreed and by them so construed that the consideration was and is one-half of one-eighth of eight cents per one thousand cubic feet, which the defendant the Texas Company has been paying for gas saved and produced from other lands belonging to plaintiff, and leased to the defendant the Texas Company, under a similar lease contract as the one herein sued upon."

The question of the necessity and sufficiency of pleadings to permit recovery in case of ambiguous contracts appears to have not been often discussed by our courts.

Judge Boyce in opinion on rehearing in Quanah, A. & P. Ry. Co. v. Cooper (Tex. Civ. App.) 236 S. W. 813, expresses doubt as to the necessity of such pleadings by a defendant when the contract has been set out by plaintiff and shows ambiguity on its face. In the case of Morgan v. Turner, 4 Tex. Civ. App. 192, 23 S. W. 287, distinguished by Judge Boyce, the contract did not show an ambiguity on its face.

Judge Smith, in San Antonio Machine & Supply Co. v. Allen (Tex. Civ. App.) 268 S. W. 532, says:

"But it devolved upon appellee to set out in specific allegations the words and phrases claimed by him to be ambiguous, or which he intended to modify or explain by parol evidence, and to also distinctly set forth those modifications and explanations. Having failed to do so, he was not entitled to judgment even though his testimony was ample."

The case, being one in which appellee had recovered on pleadings held to be insufficient, was reversed and remanded apparently to permit amendment of pleadings and full development.

While the pleadings in the instant case are meager, we believe they in effect set out an ambiguity, and come within the rule stated by Judge Gill in Linton v. Brownsville Land & Irrigation Co., 46 Tex. Civ. App. 225, 102 S. W. 433, wherein it is said:

"It has been held, however, and we think rightly, that one suing on an ambiguous contract, who chooses to set it out in hæc verba, must put a definite construction on it by averment. Durkee v. Cota, 74 Cal. 313, 16 P. 5; Joseph v. Holt, 37 Cal. 253; 4 Ency. Pl. & Pr. 918. This, however, amounts to nothing more than the familiar principle that the pleading must be sufficiently certain to support a judgment. In the case first cited, the contract was susceptible of more than one construction, and it was held, not that the pleader must allege the facts and circumstances upon which he predicated a particular construction, but that he must by a sufficiently clear averment indicate to the court the construction under which he predicated his right to a judgment. In the case before us, it so happens that by the facts averred and relief demanded the pleader has clearly indicated the construction placed by him upon the term of the instrument embodied in his petition."

This latter case was cited by Judge Higgins in Greene Gold-Silver Co. v. Silbert (Tex. Civ. App.) 158 S. W. 803, in which a patently ambiguous contract had been set out in hæc verba, and a construction thereof alleged. The court said:

"The telegrams and letters, relied upon by appellee as evidencing the contract sued upon, are set out in the petition in hæc verba. In so far as concerns liability for past-due salary, the same are regarded as ambiguous. The question of the sufficiency of the petition to support a judgment for such salary, therefore, arises. * * * Since the telegrams and letters are pleaded in hæc verba, the petition, of necessity, must partake of whatever ambiguity exists therein, and in such case the pleader, by averment, must place some definite construction thereon, in order to cure the ambiguity and to support a judgment. Linton v. Brownsville L. & T. Co., 46 Tex. Civ. App. 225, 102 S. W. 433; Durkee v. Cota, 74 Cal. 316, 16 P. 5, 4 Ency. Pl. & Pr. 918. In this case the allegations sufficiently show the construction placed by appellee upon the contract, and the petition is sufficient. McCauley v. Long, 61 Tex. 74; Wooters v. Railway Co., 54 Tex. 294."

[16] Although the allegation, "and by them so construed that the consideration was and is one-half of one-eighth of eight cents," etc., would not be good under special exception, in its absence we consider that plaintiff was entitled to prove facts to sustain the conclusion pleaded. His evidence, as above stated, was ample to show that the Texas Company had paid him and his children repeatedly on that basis under the very contract here involved. We adhere to the opinion of this court on original hearing that justice will probably be better subserved by remanding this cause. While there is no competent evidence in the record to show the amount of casing-head gas produced, yet, in view of the obligation of the Texas Company in the contract to keep ac-

count of casing-head gas saved and utilized, etc., and to render monthly statements, if requested, and plaintiff's demand in his pleadings for a statement, we consider that the statements of counsel referred to in the original opinion were calculated to lead the court and counsel to believe that the amount of casing-head gas produced was being agreed to and was not in dispute.

[17] Even though there is insufficient evidence to support a judgment, yet, when it appears probable that a cause has not been fully developed, the appellate court will on reversal, in the interest of justice, remand rather than render it.

As said by the Commission of Appeals in Associated Oil Co. v. Hart, 277 S. W. 1043, and expressly approved by the Supreme Court: ·

"There is no reason to suppose this testimony cannot be supplied upon another trial, and it would be highly inequitable for us to render judgment, or what is the same thing, in effect, to affirm the judgment of the Court of Civil Appeals, and thus deprive plaintiffs in error of the opportunity to meet this defect in their case. It is the rule, where a judgment has been reversed, to remand to the trial court rather than to render, where the ends of justice will be better subserved thereby. Such remanding has often been ordered to supply additional testimony, to amend the pleadings, and even to show jurisdiction. Buzard v. Bank, 67 Tex. 83, 2 S. W. 59, 60 Am. Rep. 7; Combes v. Stringer, 106 Tex. 427, 167 S. W. 217; Hill v. Moore. 85 Tex. 335, 19 S. W. 162; Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265; Smith v. Patton (Tex. Com. App.) 241 S. W. 109; Faulkner v. Reed (Tex. Com. App.) 241 S. W. 1002; Camden, etc., Co. v. Yarbrough (Tex. Com. App.) 215 S. W. 842; Baker v. Shafter (Tex. Com. App.) 231 S. W. 349; Pershing v. Henry (Tex. Com. App.) 255 S. W. 382."

See, also, Paris & G. N. R. Co. v. Robinson, 104 Tex. 482, 140 S. W. 434, and Finberg v. Gilbert, 104 Tex. 539, 141 S. W. 82.

We adhere to the original holding on the other questions discussed in the motions.

The motions for rehearing are overruled.

FUNDERBURK, J. (dissenting). The very full and clear statement of the views of the majority of the court upon rehearing makes it unnecessary for the writer, who is not in accord with the conclusions reached, to consume a great deal of space in stating the grounds of his dissent.

There is first involved a question of pleading. Whatever difference of opinion there may be as to whether "½ of ⅛ of .08 cents" is or is not ambiguous, there can be little doubt, I think, that plaintiff's pleading is ambiguous to say the least, wherein same undertakes to allege either or both mutual mistake and ambiguity. The pleading being ambiguous, it becomes necessary to employ rules of construction to determine whether or not there is intended to be alleged (1) "mutual

mistake" alone, or (2) "ambiguity" alone, or (3) both "mutual mistake" and "ambiguity." Unless mistake and ambiguity are synonymous, the intent of the pleader to allege both may at once be ruled out. If there are different pleas, they are, in a sense, inconsistent. The rules of pleading require that they be set out in separate counts, or one alternative to the other. The allegations in each count or alternative plea are required to be consistent. District Court Rule 51; Hillebrant v. Booth, 7 Tex. 499; Thomas v. Browder, 33 Tex. 783.

Application of a familiar rule of construction requires that, if an ambiguous pleading be given one of two or more possible constructions, it will show a violation of the rules of pleading, but, if given another, it will conform to such rules, it should be given the latter interpretation. It only remains to be considered then whether it is "mutual mistake" that is alleged, or whether it is "ambiguity," and whether, after all, there is any difference in the two. If we apply a well-known rule of construction, it was mistake that was intended to be pleaded. The parties and the trial court placed this practical construction on the pleadings. The plea of limitation was sustained to the claim of a right to reformation based on the theory that a plea of mutual mistake tendered such issue. Besides this, the pleading itself clearly shows a purpose to allege mutual mistake by employing the terms "by inadvertence" and "mutual mistake." Whatever else, if anything, was intended to be alleged, it seems to me too clear for argument that the pleading did seek to allege mutual mistake. Apparently the "ambiguity" theory was never injected into the case until after it became certain that any relief on the theory of "mistake" was barred by limitation. No trial amendment or other new pleading was filed to meet this situation.

This brings me to a consideration of the question: May the same pleading be good as one tendering an issue of mutual mistake as a basis for reformation and also as one permitting parol proof of the real intention of the parties on the ground that the writing is ambiguous? As I see it, if this can ever be so, it is true to a very limited extent. Ambiguity may occur in different ways. It may result by the employment of language susceptible of more than one meaning. In such case, the parties employ their words purposely, intending that they shall have the very meaning that expresses the agreement. It is. essential to this character of ambiguity that the words be capable of such meaning. This, I think, is the case before us. The parties contracted that the plaintiff should be paid as royalty "½ of ⅛ of .08 cents." Intention must be imputed to the parties to write the words precisely as they did write them. They intended to precede the figure "8" with "naught." Likewise, the "period" preceding

the "naught." Why? Because ".08" means but one thing, and there is nowhere in the entire writing anything else to indicate or create a doubt as to the fact that the parties meant what they plainly expressed—"eight-one-hundredths." Does the use of "cents"—plural rather than singular—raise a doubt as to the meaning of the language? It certainly carries not the remotest suggestion that "dollars" was intended instead of "cents." The plural of the word, if inaccurate, does not suggest a question as to whether "dollars" was intended. But it seems to me the use of "cents" instead of "cent" is not improper. Such is not an uncommon designation of a monetary denomination, such as dollars, cents, mills, "$\frac{8}{100}$" cents is but an abbreviated expression of $\frac{8}{100}$ of a cent. So much for this character of ambiguity.

It occurs to me that there is another way that an ambiguity may result. That is, in a sense, the same as "mistake." For instance, suppose the expression under consideration had read "½ of ⅛ of $.08 cents"? The use of the character "$" and also the word "cents" would show a conflict and indicate mistake. Perhaps upon proper pleading and proof of mistake the instrument so written could be reformed. In such a case it would be necessary to allege wherein the mistake occurred; that is, whether in the use of the dollar mark or the word "cents." The proof would have to conform to the pleading. A careful pleader would, no doubt, consider it necessary to allege that the mistake occurred by use of the dollar mark and in the alternative by the use of the word "cents." But, I am not prepared to say that such a writing could not be declared upon by alleging ambiguity. Such plea would, of course, have to show the real meaning intended. How the failure to express the real meaning resulted would, in such case, become unimportant. This because the fact of ambiguity would be apparent on the face of the instrument. Even in the supposed case, the pleadings presenting the theory of mistake would not serve to present at the same time the theory of ambiguity and furnish proper basis in the pleading for recovery on both. They are different causes of action. They are subject to different defenses, as, for instance, limitation. They are not supportable by the same evidence. I am therefore forced to the conclusion that the plaintiff's pleading, calling as it does for construction, must be interpreted as alleging that "½ of ⅛ of .08 cents" was so written instead of "½ of ⅛ of 8 cents," or "½ of ⅛ of $.08," as the mistake of the scrivener. That the pleading is not susceptible of the construction that is sought as one plea to present the issue of mutual mistake, and as another one the issue of ambiguity, to my mind is quite evident.

The trial court having disposed of the case upon the construction of the pleadings that the issue tendered was that of mistake rather than ambiguity, this court, I think, is not at liberty to hold that the other meaning that an ambiguous pleading may have shall constitute the basis of relief not available, but denied under the different meaning which it was construed to have. There seems to be no difference of opinion as to the necessity for pleadings to present the issue of ambiguity. This was the holding in the original opinion and in the opinion of the majority on rehearing, as shown by the quotation of San Antonio Machine & Supply Co. v. Allen (Tex. Civ. App.) 268 S. W. 532, as follows:

"But it devolved upon appellee to set out in specific allegations the words and phrases claimed by him to be ambiguous, or which he intended to modify or explain by parol evidence. * * * Having failed to do so, he was not entitled to judgment even though his testimony was ample."

No question, however, is presented of the sufficiency of the pleading. If the proper construction of the pleading is that it sought to allege ambiguity as distinguished from mistake, it may be conceded it was sufficient, in the absence of special exception.

The real question is one of construction of the pleading to determine whether or not thereby it was intended to be alleged that the particular provision in the contract was ambiguous. I do not think so, and for this reason, in my opinion, the judgment of the trial court should be affirmed, even though there exists an ambiguity.

The question of whether the provision is, in fact, ambiguous, has already been considered to some extent in the foregoing observation. To my mind, had the provision read "½ of ⅛ of .08 dollars," it would never have been seriously contended in any court that there was an ambiguity. It cannot be claimed that "½ of ⅛ of .08 cents" is ambiguous, and "½ of ⅛ of .08 dollars" is not. This is but another way of saying that, as I view it, the ambiguity has arisen from (1) the fact that payment of royalties was made at the rate of eight cents; and (2) the parol evidence showed that the real agreement of the parties was that eight cents was the royalty agreed to be paid. Neither of them, it will be conceded, is proper to be considered in determining the existence or not of an ambiguity. It is a matter of no little difficulty, however, to determine the existence of ambiguity apart from the allegation that eight cents per thousand was actually paid and apart from the evidence that such was the agreement that resulted in the contract. It may be remarked in this connection that it was not strictly proper to allege in the pleading that eight cents was actually paid. This was properly a matter of evidence to support a proper plea of ambiguity, and it is never correct to allege purely matters of evidence.

In order to consider the question of the ex-

istence of ambiguity in the provision in question entirely divorced from other considerations, let us suppose that, in the respect under consideration, the contract had read "½ of ⅛ of .08 dollars"; that production was had and the Texas Company had paid Curry .08 dollars and thereafterwards brought suit alleging that the provision was ambiguous and that .08 cents was intended, with a claim for the difference on the ground that payment had been made by mistake. As I see it, this would present precisely the same question we now have. Would the company be entitled to introduce parol evidence to show that the real agreement was that the rate of payment should be .08 cents? The same argument only could be made to support the existence of an ambiguity as is made in this case. The sum total of such argument is (1) that "dollars" is plural and should otherwise be singular; and (2) that the ".08" is written in decimals rather than as a common fraction, such as "½ of ⅛." These reasons do not appeal to me as valid. As said before, it is wholly immaterial that "dollars" or "cents" in a particular connection is grammatically correct or not. A grammatical error does not necessarily produce an ambiguity. The important question is, can "dollars" mean "cents," and, if not, how is the question affected where dollars or cents is written as plural or singular? As to the use of both common and decimal fractions, it is not at all strange that the decimal system of numbering was employed when it comes to that part of the statement prescribing the sum of money to be paid. It seems to me that it is a matter of common knowledge that decimal fractions are commonly used in expressing sums of money. Had the provision read "½ of ⅛ of 8/100 cents," it would probably never have been argued that there was an ambiguity, and yet it would have been unusual to have expressed the monetary denomination with common fractions rather than in decimals. Also, I take it, in the case just instanced, the plural of the word "cents" would scarcely have provoked an argument that it rendered the provision uncertain of meaning or capable of more than one meaning. I wholly fail to see that ".08" is not exactly the equivalent of 8/100, which, being true, some inconsistency of expression or unusualness of arrangement which I find wholly absent, would be necessary to warrant the striking down of a sol-

emn contract by the introduction of parol evidence.

It must be borne in mind that it is wholly beside the question that the parties may have actually intended to make a different provision. They must be, in the absence of a pleading and proof of fraud, accident, or mistake, held to have meant what they have plainly said.

I think it is probably true that the case of Schottman v. Hoffman, 73 Miss. 188, 18 So. 893, 55 Am. St. Rep. 527, quoted in the majority opinion, furnishes a state of facts the more nearly analogous to that considered here, wherein it has been held that an ambiguity exists. But this case, it seems to me, is clearly distinguishable. Suppose, in that case, there had been no distinct space between the two ciphers which were written closely together and the figure "5," and suppose none of the ciphers were written in anywise above the "5." In that case, would it have been held there was an ambiguity? Such would have brought the case upon a parallel with this. I cannot find any warrant to speculate on the fact that the parties meant something different from what they have plainly provided.

It is almost humanly impossible not to consider the hardship that results from the fact that the parties intended to stipulate for a royalty of eight cents instead of .08 cents, but ample remedy is afforded by law in a case where the parties have intended to insert a provision in a contract and have by mistake omitted same or inserted another. Because that remedy in the instant case appears to be unavailable does not justify us, in the opinion of the writer, in misapplying for appellant's benefit a principle of law that to-morrow may be highly essential for the preservation and protection of his own rights in some other relation. The temptation to give appellant relief by reading into the law an exception to avoid the apparent harshness of the rule in the particular case is great. It is this tendency of courts, more than anything else, that results in conflicts in statements of the law. In the view of the writer, however, the exceeding importance of maintaining unimpaired the principle that a written contract, when plain, shall be the sole evidence of the intention of the parties, transcends any considerations of the effect upon an individual in a given case.